**S. AMANDA MARSHALL, OSB #953473**
**United States Attorney**
**District of Oregon**
**FRANK R. PAPAGNI, JR., OSB #762788**
**ANNEMARIE SGARLATA, OSB #065061**
**Assistant United States Attorneys**
**405 E. 8th Ave., Suite 2400**
**Eugene, OR  97401**
**Telephone:  (541) 465-6771**
**Facsimile:  (541) 465-6917**
**frank.papagni@usdoj.gov**
**annemarie.sgarlata@usdoj.gov**
**Attorneys for United States of America**

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 6:10-CR-60066-HO** |
| **v.** | **UNITED STATES' TRIAL MEMORANDUM** |
| **STEVEN DWIGHT HAMMOND and DWIGHT LINCOLN HAMMOND, JR.,** | **Trial Date: June 12, 2012 @ 9:00 AM** |
| **Defendants.** | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District

of Oregon and Frank R. Papagni, Jr., and AnneMarie Sgarlata, Assistant United States Attorneys,

respectfully submits it trial memorandum for this Court's consideration prior to trial in this case.

\ \ \

\ \ \

\ \ \

**UNITED STATES' TRIAL MEMORANDUM**                                         **Page 1**

# I.  STATUS OF THE CASE

On May 16, 2012, the grand jury returned a Superseding Indictment which reduced the number of charges from nineteen to nine.[1]  It narrowed the conspiracy count's time span from twenty-four to seven years, decreased the objects of the conspiracy by four, cut the manner and means by three, and deleted ten overt acts (CR 104).[2]

Defendants are jointly charged with Conspiracy, three counts of Using Fire to Destroy or Damage Property of the United States (Hardie-Hammond, Lower Bridge Creek, Grandad), and two counts of Using Fire to Cause More than $1,000 of Damage and Depredation to Property of the United States (Lower Bridge Creek and Grandad).  *See* Counts 1-4, 7 and 8; 18 U.S.C. §§ 2, 844 (f)(1) and (2), 844 (h), 844(i), 844 (n), and 1361.

Counts 1 and 7 allege facts which increase the mandatory minimum and maximum sentences. 18 U.S.C. §§ 844(f)(1) and (2), 844(n).

Defendant Steven Hammond is solely charged with Using Fire to Destroy or Damage to Property of the United States and Using Fire to Cause More than $1,000 of Damage and Depredation to Property of the United States (Krumbo Butte), and, Tampering with a Witness.  *See* Counts 3, 4 and 9; 18 U.S.C. §§ 844 (f)(1) and (2), 844(h), 1361, and 1512(b)(3).  Trial is set to begin June 12, 2012, in Pendleton, Oregon (CR 103, 110).

\ \ \

---

[1]On June 17, 2010, Defendants were jointly charged in an Indictment with Conspiracy to Commit Arson, four counts of Arson, three counts of Depredation of Government Property by Fire, and four counts of Threaten to Assault a Federal Officer (CR 1).

[2]On November 1, 2011, when the Court asked defense counsel if it would take three weeks to try this case, Mr. Blackman answered: "Well, if it were within my control, the government would simplify their case," and the Court responded: "He will." (CR 53; TR at 11).

**UNITED STATES' TRIAL MEMORANDUM**                                              **Page 2**

## II.  PENDING MOTIONS

After the Superseding Indictment's return on May 17, 2012, defendants filed a motion *in limine*, to strike counts from the Superseding Indictment, exclude evidence regarding a burn program and to postpone trial, and for discovery on May 18, 1012 (CR 111).  Defendants filed a supplemental memoranudm on May 21, 2012 (CR 113).  The government replied to defendants' motion on May 21, 2012 (CR  119).

Defendants also filed on May 21, 2012,  motions to strike overt acts from Count 1 (CR 114); and motions to dismiss Counts 4, 6, and 8, alleging that these offenses are barred by the statute of limitations (CR 115).  They also filed motions to dismiss Counts 1, 7, and 9 of the Superseding Indictment on grounds of duplicity (CR 116); and motions to dismiss Counts 3 or 7, and 4 or 8 on grounds of multiplicity (CR 117, 118).

On May 22, 2012, the Court held a hearing and took defendants' motions under advisement. On May 23, 2012, the government filed responses in opposition to all defendants' motions (CR 129, 130, 131, 133).   The government also responded , to defendants' motions to limit the introduction of evidence (CR 98, 99, 100, 132,134, 135).

## III.  ELEMENTS OF THE OFFENSES

The following statutes, elements and potential sentences apply to this prosecution.

A.    Count 1 – Conspiracy

1.    *Applicable Statutes*

18 U.S.C. § 844(m) states that: "A person who conspires to commit an offense under subsection (h) shall be imprisoned for any term of years not exceeding 20, fined under this title, or both."  *See* Count 1, Object of the Conspiracy (2)(Depredation of more than $1,000 of United States property by means of fire).

**UNITED STATES' TRIAL MEMORANDUM**                                                   **Page 3**

18 U.S.C. § 844(n) states that: "Except as otherwise provided in this section, a person who conspires to commit any offense defined in this chapter shall be subject to the same penalties (other than the penalty of death) as the penalties prescribed for the offense the commission of which was the object of the conspiracy." *See* Count 1, Objects of the Conspiracy (1) and (3)(Use of Fire to Damage or Destroy United States Property, and Property Used in Interstate Commerce).

The government may charge a conspiracy to commit more than one crime. *Braverman v. United States*, 317 U.S. 49, 53 (1942)(a single agreement to commit multiple crimes is one conspiracy). The government need only prove one of the multiple objects to sustain a conviction for conspiracy. *Griffin v. United States*, 502 U.S. 46 (1991).

The three criminal objects of this conspiracy are covered by the same title and section, 18 U.S.C. § 844. Special verdicts will require jurors to separately consider each object of the conspiracy, and, if a guilty verdict is returned, the parties and court will be directed to the appropriate penalty provision. *See e.g., United States v. Allen*, 302 F.3d 1260 (11th Cir. 2002)(general verdict did not specify drug, different drugs had different sentences).

        2.    *Elements*

To prove a conspiracy under 18 U.S.C. §§ 844(m), the government must establish: (1) the defendant knowingly entered into an agreement to engage in criminal activity, (2) one or more overt acts were taken to implement the agreement, and (3) the defendant had the requisite intent to commit the substantive crime – in this case, the requisite intent of a violation of section 844(f)(1) and (2) and 844(i), is an intentional and malicious; and, a willful intent is required to violate 18 U.S.C. §1361, a federal felony, by intentionally using fire. *See United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004)(referring to 18 U.S.C. § 371); *see also Comment* 9th Cir. Model Crim. Jury Instr. 8.20, CONSPIRACY – ELEMENTS (2010).

**UNITED STATES' TRIAL MEMORANDUM**                                   **Page 4**

Elements of this offense are:

(1) Beginning on September 9, 1999 and continuing through August 2006, there was an agreement between two or more persons to commit at least one crime as charged as an object of the conspiracy in the superseding indictment; and, (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and, (3) one of the members of the conspiracy performed at least one overt act, on or after September 9, 1999, for the purpose of carrying out the conspiracy, and (4) all jurors must agree on the object of the conspiracy and the particular overt act they find was committed.

Ninth Circuit Model Crim. Jury Instr. 8.20, CONSPIRACY – ELEMENTS (2010).

## Object # 1 -- Conspiring to Use Fire to Damage or
## Destroy Property of the United States

If convicted for conspiring to intentionally and maliciously damage or destroy or attempting to damage and destroy, by means of fire, property of the United States, the sentence under 18 U.S.C. §§ 844(f)(1), 844(n), is not less than a five year nor more than a twenty year prison term, a maximum $250,000 fine, and a three year term of supervised release. 18 U.S.C. §§ 3571(b)(3); 3583(b)(2).

## Creating a Substantial Risk of Injury to Any Person

If jurors also specially finds defendant(s) conspiratorial conduct directly and proximately created a substantial risk of injury to any person, under 18 U.S.C. §§ 844(f)(2), 844(n), the sentence is not less than a seven year prison or term or more than a forty year prison term, with a maximum $250,000 fine, and a five year term of supervised release.  18 U.S.C. §§ 3571(b)(3); 3583(b)(1).

The special verdict must identify each person who directly or proximately faced a substantial risk of injury because of defendants' conduct (*i.e.,* BLM employees and firefighters, Chad Rott, Lisa Megargee, Lance Okeson and Joe Glascock).

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 5**

**Object # 2 – Conspiring to Use Fire to Cause More than**

**$1,000 of Damage and Depredation Against Property of the United States**

If convicted of conspiring to intentionally use fire to willfully cause more than $1,000 of damage and depredation to property of the United States, a felony which may be prosecuted in a United States Court, under 18 U.S.C. §§ 844(h) and 1361, the sentence is imprisonment for any term of years not to exceed twenty.  18 U.S.C. § 844(m).18 U.S.C. § 844(h) can only be proven when fire is intentionally used to commit any felony which may be prosecuted in a court of the United States.

**Object # 3 – Conspiring to Use Fire to Damage or Destroy Property Used**

**in Interstate Commerce or in an Activity Affecting Interstate Commerce**

If convicted of conspiring to intentionally and maliciously damage or destroy, or attempt to damage or destroy, by means of fire, property used in interstate commerce or in an activity affecting interstate commerce, under 18 U.S.C. §§ 844(i), 844(n), the sentence is the same as the substantive offense – a five year mandatory minimum and a twenty year maximum prison term, a maximum $250,000 fine, and a three year term of supervised release. 18 U.S.C. §§ 3571(b)(3); 3583(b)(2)[3].

    B.    <u>Counts 2, 3, 5 and 7  - Using Fire to Destroy or Damage Property United States Property</u>

        1.    *Applicable Statutes*

18 U.S.C. § 844(f)(1) provides in part pertinent that:  "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire, . . . vehicle, or other personal or real property in whole or in part owned or possessed by, . . ., the United States, or any department or agency thereof . . .."

---

[3]It should be noted that unlike the first two objects, the Superseding Indictment does not allege a corresponding substantive count for the third object of the conspiracy.

**UNITED STATES' TRIAL MEMORANDUM**           **Page 6**

18 U.S.C. § 844(f)(2) provides in relevant part that: "Whoever engages in conduct prohibited by this subsection, and as a result of such conduct, directly or proximately creates a substantial risk of injury to any person, . . .."

18 U.S.C. § 2, Principals, provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punisable as a principal.  (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

"Maliciously" is comparable to the common law definition of malice and "is satisfied if the defendant acted intentionally or with willful disregard of the likelihood that damage or injury would result from his or her acts."  *United States v. Gullett*, 75 F.3d 9421, 948 (4th Cir. 1996).

Because "malicious" means wrongful and done intentionally without just cause or excuse, Counts 2, 3, 5 and 7 redundantly includes the term "intentionally" to provide defendants with sufficient notice of that element.  *See United States v. Chesney*, 10 F.3d 641 (9th Cir. 1993).

> 2.    *Elements*

The defendants can be found guilty of the offenses charged in Counts 2, 3, 5 and 7, only if all the following facts are proven beyond a reasonable doubt:

1.    the defendant damaged, destroyed, attempted to damage or destroy the real or personal property by means of a fire;

2.    the defendant acted intentionally, maliciously or with deliberate disregard of the likelihood that damage or destruction would result from his acts; and

3.    the real or personal property the defendant damaged, destroyed or attempted to damage or destroy was owned and possessed by the United States, or any of its departments or agencies.  18 U.S.C. § 844(f)(1).

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 7**

And – only as to Count 7 –

4.      as a result of defendant's conduct, he directly and proximately created a substantial risk of injury to another person.  18 U.S.C. § 844(f)(2).

Count 7 alleges an additional element which increases the mandatory minimum and maximum sentence.  *Washington v. Recuenco*, 548 U.S. 212, 220 (2006)(sentencing factors that serve to raise the statutory maximum penalty are functionally equivalent to elements of the offense so far as the Sixth Amendment is concerned); *see also, Apprendi v. New Jersey,* 530 U.S. 466 (2000).

A special verdict will identify each person and jurors must unanimously agree that the identified person directly or proximately faced a substantial risk of injury because of defendant(s) conduct (*i.e.,* BLM employees and firefighters, Chad Rott, Lisa Megargee, Lance Okeson and Joe Glascock.*).*

Since the identified persons are the same individuals named in the assault counts in the original indictment, defendants have received adequate notice who the government alleges were victims of defendants' criminal acts.

> 3.      *Potential Sentence*

If convicted of violating 18 U.S.C.§ 844(f)(1), a defendant faces a five year mandatory minimum and a twenty year maximum prison term, a maximum $250,000 fine, and not more than a three year term of supervised release. 18 U.S.C. §§ 3571(b)(3); 3583(b)(2).

If also convicted of violating 18 U.S.C. §§ 844(f)(1) and (2), a defendant faces a seven year mandatory minimum and a forty year maximum prison term, a maximum $250,000 fine, and not more than a five year term of supervised release.  18 U.S.C. §§ 3571(b)(3); 3583(b)(2).

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 8**

C.     Counts 6, 8 and 10 - Depredation of more than $1,000 of United States Property by
Using Fire

1.     *Statutes*

Counts 6, 8, and 10, cite the following statute and subsections:

18 U.S.C. § 1361 provides, in part pertinent: "Whoever willfully injures or commits any

depredation against any property of the United States, or of any department or agency thereof, . . . or

attempts to commit any of the foregoing offenses, . . .. If the damage or attempted damage to such

property exceeds the sum of $1,000, . . .."

18 U.S.C. § 844(h) provides in part pertinent here that: "(1) Whoever uses fire . . . to commit

any felony which may be prosecuted in a court of the United States, . . .."

2.     *Elements*

The defendants can be found guilty of the offenses charged in Counts 6, 8 and 10 only if all

the following facts are proven beyond a reasonable doubt:

1.     the defendant willfully caused or attempted to cause damage or depredation to United

States property, and

2.     the damage or attempted damage to the property exceeded $1,000, which is a felony

which may be prosecuted in a court of the United States; and,

3.     the defendant intentionally used fire to the damage or attempted damage to the

property. 18 U.S.C. § 844(h), 1361.

In accordance with *Cheek v. United States*, 498 U.S. 200-01 (1991), "willfulness" has been

alleged as the requisite intent only because the statute's language states it is an element of the felony

offense of depredation of more than $1,000 of United States property. *See also United States v.

Henderson*, 243 F.3d 1168, 1171 (9th Cir. 2001)(willfulness required in BLM regulatory offenses).

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 9**

Because a defendant must intend to "use of fire" when feloniously damaging or attempt to damage United States property, the specific intent alleged in Counts 6, 8 and 10 is "intentionally."

       *3.    Potential Sentences*

If convicted of violating 18 U.S.C. §§ 2, 844(h)(1) and 1361, defendants shall be sentenced to ten years in prison for the first conviction; and, twenty years in prison for each additional conviction, and shall terms of imprisonment cannot be served concurrently with any other term of imprisonment.

    D.    <u>Count 9 - Tampering with a Witness</u>

       *1.    Applicable Statute*

18 U.S.C. § 1512(b) states in relevant part that: "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, . . ., with intent to – (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States, of information relating to the commission or possible commission of a Federal offense, . . .."[4]

Since "knowingly" is an element of this offense, it has been alleged in Count 9.  When a defendant is charged with "corrupt persuasion," as here, jurors must be instructed that they must find the defendant acted "knowingly, dishonestly, and with intent to hinder, delay or prevent the communication." *Arthur Andersen L.L.P. v. United States*, 544 U.S. 696 (2005).  Failure to instruct the jury of this "requisite consciousness of wrongdoing" is reversible error. *Id.* At 706.  18 U.S.C. §

---

[4]Section 1512 proscribes conduct intended to illegitimately affect the presentation of evidence in federal proceedings.  Generally described as "obstructing justice," federal courts have generally interpreted § 1512(b) strictly since it became effective in 1982 and amended in 1988. The courts have limited the statute's applicability to only to those methods specifically enumerated.  *See United States v. Kulczyk*, 931 F.2d 542, 546 (9th Cir. 1991)(under pre-1988 version of statute, noncoercive, nondeceptive conduct not covered by §1512).

It has been upheld against a variety of constitutional challenges, including objections based on vagueness, and First Amendment protection of free speech. *United States v. Hutson*, 843 F.2d 1232, 1234-35 (9th Cir. 1988).

**UNITED STATES' TRIAL MEMORANDUM**                            **Page 10**

1512(b)(3); *United States v. Rasheed*, 663 F.2d 843, 851 (9th Cir. 1981)(as used in § 1503, "corruptly" means that the act must be done with the purpose of obstructing justice).

The remaining "intent" requirement in § 1512(b) was addressed in *Fowler v. United States*, 131 S.Ct. 2045 (2011).  In *Fowler,* the Court addressed the expressed intent requirement in 18 U.S.C. § 1512(g) that no state of mind need be proved with regard to whether the law enforcement officer (or judge) is a federal actor.  The Court's guidance on the interpretation of that section also addressed the interpretation of § 1512(b)(3), the crime charged in this case – "[w]hat, then must the Government show to prove that such a defendant intended to prevent communications to federal officers?"  131 S.Ct. at 2050.

The Court held the Government need not prove beyond a reasonable doubt or even that it is more likely than not, that the hypothetical communication would have been to a federal officer, only that there was a "reasonable likelihood" it would have been.  *Id.* at 2052-53.   In other words, " . . . the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical."  *Id.* at 2052.

Paraphrased for application here, defendant Steven Hammond used  intimidation, threats or corrupt persuasion, or attempt to do so, against Joe Glascock with the intent to hinder, delay, and prevent the reasonable likelihood that he would communication to a federal law enforcement officer about the commission or possible commission of a federal offense or offenses.  *See also United States v. Davis,* 932 F.2d 752 (9th Cir. 1991)( under §1512, the government is not required to prove the defendant knew he was tampering with a federal proceeding); *United States v. Ardito*, 782 F.2d 358, 360-61 (2d Cir. 1986)(finding no scienter requirement that defendants knew they were obstructing a federal proceeding).

**UNITED STATES' TRIAL MEMORANDUM**                                            **Page 11**

As made clear by the statute's "attempt" language, the government is also not required to prove the defendant succeeded in his effort to tamper with the person.  Nor, need the government prove that the person changed or withheld information related to the commission of the federal offense or possible offense.  *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999).

Special verdicts can address the means of the communication – threats and intimidation or attempt at corrupt persuasion.  While not required, the superseding indictment identifies the federal offense and special verdicts can address the named individuals as in Count 7.

>    2.    *Elements*

The defendant can be found guilty of the offense charged in Count 9 only if all the following facts are proven beyond a reasonable doubt:

>    1.    the defendant knowingly used or attempted to use intimidation, threat or to corruptly persuade another person (Joe Glascock),

>    2.    with the intent to hinder, delay, or prevent the communication or possible communication to a law enforcement officer of the United States,

>    3.    of information relating to his or defendant Dwight Lincoln Hammond, Jr., commission or possible commission of the federal offense;

Of intentionally and maliciously damaging, destroying or attempting to damage and destroy by means of fire the property of the United States, or any department or agency of the United States, and

engaging in conduct that directly and proximately created a substantial risk of injury to one or more persons including but not limited to BLM employees and firefighters, Chad Rott, Lisa Megargee, Lance Okeson and Joe Glascock.

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 12**

3.      *Potential Penalty*

If convicted of violating 18 U.S.C. § 1512(b)(3), the maximum sentence is a twenty year

prison term, a maximum $250,000 fine, and a five year term of supervised release.

## IV.  FACTUAL ISSUES

A.      Issues for the Jury

**Count 1 – Conspiracy**

From September 1999, to August 2006, did father and son, Dwight and Steven Hammond,

conspire with each other, and procure other family members, Susan, Russell and Dustin Hammond,

and Jacon Taylor to ignite fires which damaged and destroyed:

(1)     property of the United States, and by doing so created a substantial risk of injury to

BLM employees and firefighters,

(2)     private property being used in interstate commerce or an activity affecting interstate

commerce; and,

(3)     more than $1,000 of property owned by the United States?

**Count 2 –Using Fire to Damage or Destroy Property of the United States**

**(Hardie-Hammond Arson)**

On Sunday, September 30, 2001, after Steven Hammond was seen by hunters shooting deer

on public land, did he and Dwight Hammond start fires and have Russell Hammond, Jacon Taylor,

and the juvenile, Dustin Hammond start fires which damaged and destroyed United States property?

**Counts 3 and 4 – Using Fire to Destroy or Damage, More than $1,000,**

**of United States Property (Lower Bridge Creek Arson)**

On August 22, 2006, did Dwight Hammond with Steven Hammond's assistance, start

multiple fires outside the area burned by lightning strikes on August 21, 2006, that damaged and

**UNITED STATES' TRIAL MEMORANDUM**                                        **Page 13**

destroyed United States property in the Lower Bridge Creek area, and caused more than $1,000 in

damages?

### Counts 5 and 6 – Using Fire to Damage or Destroy More than $1,000
### of United States Property (Krumbo Butte Arson)

On August 22, 2006, while a county-wide burn ban was in effect and without notifying BLM

employees and firefighters of his intent to start fires, did the fires Steven Hammond admitted igniting

near Krumbo Butte that damaged and destroyed United States property, and caused more than $1,000

in damages?

### Counts 7 and 8 – Using Fire to Damage or Destroy United States Property
### and Create a Substantial Risk of Injury to Others  (Grandad Arson)

On August 23, 2006, did Dwight Hammond with Steven Hammond's assistance, start

multiple fires near the east side of Bridge Creek Road which damaged and destroyed more than

$1,000 of United States property;

and, by setting fires behind and in front of BLM employees and firefighters Chad Rott, Lisa

Megargee, Lance Okeson, Joe Glascock, create a substantial risk of injury to them and others?

### Count 9 – Tampering with a Witness

On August 24, 2006, at the Frenchglen Hotel, did Steven Hammond meet BLM Rangeland

Conservationist Joe Glascock attempt to corruptly persuade him by saying that if he wanted to be a

part of the community, he would make this go away, and if not, Steven Hammond threatened that he

would claim that Glascock actually ignited the fires.

    B.    Summary of Facts

A review of the government's "Third Trial Witness List" notifies defendants of  the testimony

it anticipates will be presented to jurors which will connect defendants directly or circumstantially

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 14**

with starting fires which damaged and destroyed United States property and created substantial risks

of injury to United States firefighters.  Other witnesses' testimony will refute claims that weather,

lightning or other natural condition was responsible for the fires attributed to defendants' actions (CR

91).[5]  Another witness will testify attempts to prevent the reporting of defendants' crimes to BLM law

enforcement officer(s).

As to Count 1, Overt Acts 4 thru 11, and Count 2, juvenile accomplice Dustin Hammond's

testimony will be corroborated by Gordon Choate, Dennis and Dustin Nelson, and BLM employee

David Ward.  Their testimony will establish that after Steven Hammond shot several deer on public

land, defendants and other family members abandoned their Sunday hunt, and with matches provided

by Steven Hammond, started fires on Hammond property near the adjoining BLM land where the

deer had been shot.

The fires were burning about two hours before defendant Steven Hammond telephoned a

BLM dispatcher to get "permission" to do a controlled burn.  Although Dwight and Steven Hammond

had worked for five years with BLM Rangeland Specialist Ward to build up fuels in that area, they

did not give Ward any notice of their intent to do a Sunday burn.

After the burn, Dustin Hammond's  uncle Steven Hammond and grandfather Dwight

Hammond told the boy not to tell anyone what they had done.  Susan Hammond also told her

grandson that if he told anyone about what they did that his grandfather, uncle and his father would

go to jail.  Dustin Hammond kept the secret until 2009.

---

[5]The government had previously supplied defendants with a list of witnesses who may
testify on July 20, 2011 (CR 33), and on February 29, 2012 (CR 75).

**UNITED STATES' TRIAL MEMORANDUM**                                      **Page 15**

As to Count 1, Overt Acts 16 thru 21, and Counts 3 and 4, the testimony of Joe Glascock, BLM rangeland "con" for the Hammond Ranches, Inc., along with Air Attack Plane Observer Bill Lambert and Malheur Fish and Wildlife volunteer Alice Elshoff will establish that the day after the fires ignited by lightning were inactive and the perimeter of the burned area was out, Dwight Hammond, aided by Steven Hammond, started several fires on the Malheur Wildlife Refuge and on BLM property in the Lower Bridge Creek area.

Before the fires occurred, Steven Hammond told Glascock that there would be a fire in that area after a lightning storm.   After the fires ignited by the lightning were out, Dwight Hammond opined to Glascock that it was too bad the fire wasn't bigger.

As to Count 1,Overt Acts 23 thru 24, and Counts 5 and 6, BLM firefighter Brett Dunten's testimony about suspicious fires in the Krumbo Butte area coupled with Steven Hammond's admitting the following day to BLM firefighter Lance Okeson that he hae started fires in that area combined with opinion of Fire Investigator John Bird an incendiary fire had been set on Hammond property near BLM property, will establish that while a county-wide fire ban was in effect, Steven Hammond was igniting fires which burned BLM property where firefighters were conducting fire suppression activities.

As to Count 1, Overt Acts 25 thru 38, and Counts 5 and 6, testimony from BLM firefighters Lance Okeson, Chad Rott, Lisa Megargee and Joe Glascock, Air Tactical Group Supervisor Joe Bates, fire investigators Carrie Bilbao, Gary White and John Bird, and fire behavior analyst Charley Martin, will establish Dwight Hammond, aided by Steven Hammond, set multiple fires near the Bridge Creek Road which burned BLM property and created a substantial risk of injury to the BLM firefighters.  Bill Otley's testimony will establish the fires damaged and destroyed his property was being used to raise cattle that were to be sold in interstate commerce.

**UNITED STATES' TRIAL MEMORANDUM**                                           **Page 16**

As to Count 9, Joe Glascock's testimony, indirectly corroborated by BLM Law Enforcement Officer (LEO) George Orr and Harney County Sheriff David Glerup will establish that while at the Frenchglen Hotel, Steven Hammond threatened and attempted to corruptly  persuade him to make the crimes he and defendant Dwight Hammond had committed the previous day to go away by not informing or misinforming federal law enforcement officers what had occurred, and if he did not, Steven Hammond would blame Glascock for the offenses.

Absent stipulation(s), Jonathan Manski's testimony will establish the costs to investigate and suppress the fires set by defendants which damaged or destroyed BLM lands, and Daniel Gonzalez and Jeffery Rose will testify about the damage and destruction caused by the fires.  Testimony from Steve Morefield and Dave Toney will address fire safety concerns on August 22 and 23, 2006.

C.    Defendants' Defenses

On August 11, 2011, defendants jointly submitted (Mr. Blackman)  "[a]nd what this case is really about is can they (the government) show that either of the defendants was responsible through an intentional (willful), malicious act of being responsible for a particular ignition.  (Mr. Matasar) at a particular time.  (Mr. Blackman) At a time and place" (CR 44, TR. at 33).  Defendants contend "the evidence will show . . . for every other ignition in that complex of fires that evolves over time due to weather conditions, et cetera (*e.g.,* "spotting," and "backfire" operations)."  *Id.* at 34, 36-37.   The primary defense witness for this evidence appears to be Roy Hogue.

On May 4, 2012, defendants jointly submitted, as to the events of September 30, 2012, "that Steven Hammond called BLM in advance of burning off undesirable vegetation on Hammond private land, was told there was no prohibition on burning, and that the fire got modestly out of control, spreading to about 128 acres of public land" (CR 100 at 7).   "Scott Gustafson" is a listed defense

**UNITED STATES' TRIAL MEMORANDUM**                                        **Page 17**

witness who apparently will only testify about "[h]unting activity on Hammond property on 09/30/2001.

On May 23, 2012, defendants jointly submitted their Trial Memorandum, which indicates they plan to raise defenses based on justification, legal excuse, and public authority, entrapment by estoppel, choice of evils, and necessity. Despite the government's numerous motions for discovery in this case, defendants have failed to provide the government any discovery concerning any of these defenses. In light of the fact that trial is scheduled to commence in less than three weeks, the government respectfully requests the Court order defendants to provide the government with discovery.

        D.      <u>Counsel for Defendants</u>

Defendant Steven Dwight Hammond is represented by Lawrence H. Matasar, # 742092. Defendant Dwight Hammond is represented by Marc D. Blackman, OSB # 730338. The government was initially represented by AUSA Kirk A. Engdall, OSB # 812156. On June 28, 2011, AUSA Engdall withdrew and was replaced by AUSA Frank R. Papagni, Jr., OSB #76278 (CR 31, 32). AUSA Amy E. Potter joined as co-counsel on July 25, 2011 (CR 39), and AUSA AnneMarie Sgarlata became co-counsel on February 13, 2012 (CR 64).

        E.      <u>Unindicted Co-Conspirators/Cooperating Witnesses</u>

As to Counts 1 and 2, Dustin Hammond, his father Russell Hammond and Jacon Taylor are unindicted co-conspirators for a federal offense occurring on September 30, 2001. In 2009, then 21-year old Dustin Hammond admitted to federal law enforcement authorities that as a 13 year boy, he and his father at the direction of his uncle started fires on Hammond property near BLM property. Dustin Hammond testified before the grand jury on April 22, 2010, and a transcript of his testimony has been provided to the defendants.

**UNITED STATES' TRIAL MEMORANDUM**        **Page 18**

On November 1, 2011, and February 24, 2012, incident to the government's ex parte motions, the Court issued an Orders under seal permitting the delayed disclosure to defendants of Dustin Hammond's identity and discoverable materials related to him.  On April 20, 2012, seven weeks in advance of trial, the government disclosed his identity and provided discoverable materials to defendants' attorneys (CR 91 at 1-13).

The indictment returned by a federal grand jury in June 2010 (CR 1) did not charge Russell and Dustin Hammond, nor Jacon Taylor.  Nor were they charged in the Superseding Indictment returned on May 17, 2012, because the statute of limitations barred their being prosecuted for violating 18 U.S.C. § 844(f), (h), or (i).[6]  18 U.S.C. § 3295; *United States v. Marion,* 404 U.S. 307, 322 (1971).

On June 17, 2010, Jacon Taylor testified before the grand jury, and a transcript of his testimony has been provided to the defendants.  Essentially, he repeatedly did not recall doing a burn on the "schoolhouse section" of Hammond property with his uncle and others in 2001.  He assured grand jurors that if he had, it would have been something he would have remembered.

Russell Hammond did not testify before the grand jury.  After learning his son's testimony would incriminate  his uncle and grandfather, Russell Hammond called his daughter in an attempt to contact Dustin Hammond and subsequently made statements to his daughter which were exculpatory and mitigating.  A report and related documents and items as to those communications will be provided to defendants.  *Kyles v. Whitley*, 514 U.S. 419, 431 (1995)(the due process clause requires the government to disclose to a criminal defendant any known information that is both favorable and

---

[6]18 U.S.C. § 3295 states: "No person shall be prosecuted, tried, or punished for any non-capital offense under section 81 or subsection (f), (h), or (i) of section 844 unless the indictment is found or the information is instituted not later than 10 years after the date on which the offense was committed.

**UNITED STATES' TRIAL MEMORANDUM**                                      **Page 19**

material to the defense); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Brady v. Maryland*, 373 U.S. 83, 87 (1963)(generally, favorable information is either exculpatory or impeaching of the government's witnesses).

## V.  CASE CHRONOLOGY

A.    Pre-Indictment Negotiations

In March 9, 2010, AUSA Engdall presented  the defendants and their attorneys a half-day review of the government's evidence (CR 11; TR at 3).  In April 2010, the parties engaged in a one-day unsuccessful pre-indictment settlement conference with Senior Ninth Circuit Court Judge Leavy. *Id.*

B.    Indictment

On June 17, 2010, a federal grand jury charged defendants in nineteen counts with committing fire-related offenses, threats to assault federal officials, tampering with witness and unlawful operations of aircraft spanning twenty-four years (CR 1).  The case was declared complex (CR 6).

Trial was postponed numerous times.  Six-hundred and forty-five days have been excluded under the Speedy Trial Act to permit the defense to complete their investigation (CR 16 (90 days exclude from Speedy Trial Act), 11 (295 days), 42 (110 days), 52 (75 days), 79 (75 days).

C.    Superseding Indictment

On May 4, 2012, defendants received notice of the government's intent to seek a superseding indictment (CR 97).  On May 17, 2012, the Superseding Indictment returned by the grand jury reduced by more than half the number of charges and the conspiracy count's time span (CR 104).  The charges focused on fire-related offenses and tampering with a witness in attempt to cover up those offenses.  A sentencing factor which raised the statutory maximum penalty was alleged in one of the objects of the conspiracy in Count, and in Count 7.  *Apprendi v. New Jersey*, 530 U.S. 466

**UNITED STATES' TRIAL MEMORANDUM**                                        **Page 20**

(2000)("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").  Essentially, the facts pertinent to the sentencing factor are the same as Counts 15 thru 18, Threaten to Assault a Federal Officer.

The Superseding Indictment has lessened the defense burden because it has reduced the evidence necessary to defend against a substantially reduced the number of charges.[7]   *United States v. Rojas-Cotnreras*, 474 U.S. 231 (1985)(reversing Ninth Circuit holding that a defendant has an automatic right to additional thirty-day preparation period when a superseding indictment is returned).

    D.    Length of Trial

On November 8, 2010, the parties estimated a trial on the original indictment would last thirteen days (CR 11).[8]

    E.    Custody Status

Defendants were summoned to appear on July 17, 2010 (CR 1).  They were released conditions and their appearances at status conferences were waived (CR 6-9)).  Four days following the filing of the government's third witness list which identified Dustin Hammond as witness, U.S. Magistrate Judge Coffin ordered as a condition of release the defendants "avoid all contact" with him (CR 91, 92).  On May 1, 2012, U.S. Magistrate Judge Coffin clarified the order and advised

---

[7]Mr. Blackman correctly anticipated in August 2011, that the government may reduce the number of charges when he commented: "If the government is really going to proceed on all of those events, I don't think it's realistic to think we can do it in two weeks."  *See* CR 44, TR at 48.

[8]On November 1, 2011, Mr. Blackman opined if the government would simplify their case "and not begin with the creation of the heavens and the earth, which is the way their current indictment is drafted" that the length of trial could be shortened (CR 53, TR at 11).

**UNITED STATES' TRIAL MEMORANDUM**                                      **Page 21**

defendants that they shall have no contact, direct or indirect, with anybody that they have been ordered to avoid contact with as a term of release (CR 95).

## VI.  MOTIONS AND RULINGS

### A.    Trial Location

In March 2011, defendants moved to have the trial in Pendleton (CR 13).  The government opposed (CR 14).  Several pleadings followed and the motion was denied without prejudice (CR 16, 17, 20-23).   In November 2011, defendants renewed their motion (CR 56, 58) and the government opposed (CR 57).

After having the matter under advisement (CR 73), on May 17, 2006, the Court granted defendants' motion and moved the trial to the John Kilkenny Post Office and Courthouse in Pendleton (CR 103).

### B.    Discovery

Approximately 6,000 documents, reports, audio, video recordings, maps, charts were provided to defendants on August 4, 2010 (CR 29; TR at 2-3).  Mr. Matasar acknowledged defendants had first received discovery in August 2010 (CR 11; TR at 7).  On November 8, 2010, Mr. Blackman acknowledged the government had provided them with the evidence accumulated during the four-year investigation, and "we were able to actually get a handle on the discovery for the most part, at least in broad outline, in September and October (2010), and we went to the site." (CR 11; TR at 5).

On April 28, 2011, defendants filed their first discovery motion (CR 18).  The government filed a reciprocal motion for discovery pursuant to Fed.R.Crim.P. 16(b) and 26.2 on May 25, 2011 (CR 25).  Defendants filed a second discovery motion on June 9, 2011 which generated a response from government on June 17, 2011, and a reply from defendants (CR 26, 28, 36).

**UNITED STATES' TRIAL MEMORANDUM**                                                    **Page 22**

On July 20, 2011, the government provided defendants with its first witness list which identified for them one-hundred and five potential witnesses (CR 33).  On August 11, 2011, U.S. Magistrate-Judge Coffin ordered "the government to turn over to the defense the – all investigator notes of interviews with witnesses that the government intends to call in its case in chief.  The timing of that will be to Judge Hogan."  (CR 42; TR at 24).

Before or on August 11, 2011, the government disclosed to defendants approximately 6,800 pages of discovery, grand jury transcripts and the complete BLM administrative file for the Hammonds, and acknowledge the legitimacy of defendants complaint about how the discovery was organized, and agreed re-organize it and present them with indexes (CR 42; TR 6-7).[9]

On October 1, 2011, the government provided 20,000 pages re-organized documents, 1,000 photographs and maps along with an index (CR 66 at 5 n. 1).  Aware of its continuing obligation to provide discoverable materials in December, January and February, and has responded to numerous discovery requests from defendants.

\ \ \

\ \ \

--------------------------------------------------

[9]Every item of discovery provided defendants have been Bates stamped. On August 11, 2011, the government reported to U.S. Magistrate-Judge Coffin,

"To date, the government has provided about 6800 pages of discovery, including BLM case reports, DOT, Department of Transportation reports, witness interviews, fire cause reports, complete with photo logs, photos and sketches, the curriculum vitae of our fire analysts people, maps, lightning reports, dispatch logs, and the complete BLM administrative file for the Hammonds. Today, I just provided defense counsel with grand jury witness transcripts, additional DOT reports and documents, and additional documents regarding the Grandad fires. Additionally, . . .to alleviate the confusion that defense counsel has with some of the discovery and to help them with the organization of it because it is a large amount of paperwork, I have created an index, which I intend to finalize and provide to them to help them to locate photos . . . and things like that." (CR 42; TR at 4-5)(underscore supplied).

**UNITED STATES' TRIAL MEMORANDUM**                                   **Page 23**

On November 1, 2011, the Court asked defendants: "What do we need to do to get discovery finished? (CR 53, TR at 6). Mr. Blackman replied: "I don't believe we need the court's assistance at this point. I think the materials that we've been requesting, are coming to us now." *Id.*

On February 21, 2012, the scope of discoverable materials decreased substantially when the Court granted the government's motion to dismiss two counts charging defendants with the 2005 Fir Creek fire, and to strike nine overt acts reducing the time span of the conspiracy charge by seventeen years (CR 68, 69, 70). On February 29, 2012, the government supplied defendants with a second trial witness list (CR 75).

As of May 14, 2012, the government had supplied defendants with 31,927 items of discovery, with some duplication, along with an index to assist them in organizing the discovery. The government continues to comply with its discovery obligations (*e.g.,* Russell Hammond's statement asserting only he and Dustin Hammond ignited the 2011 fires). On May 16, 2012, the Superseding Indictment returned against defendants further reduced the number of charges.

On May 22, 2012, at 5:03 pm, the Bendix King (BK) radio tag was given to defense attorney Matasar as directed by the Court that morning.

C.    Reciprocal Discovery Provide the Government

A year ago, the government filed a motion for reciprocal discovery pursuant to Fed.R.Crim.P. 16(b) and 26.2 (CR 24). *United States v. Nobles*, 422 U.S. 225 (1975)(applying witness statement production obligations to the defense under Rule 26.2).

D.    Discovery of Defense Expert Witness

On August 11, 2011, Mr. Matasar informed the government "[w]e will be providing Mr. Papagni with our arson expert and his CV and that sort of materials" (CR 44, TR at 22). But, the government did not receive a CV until February 14, 2012, and his reports on May 4, 2012.

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 24**

Roy Hogue, defendants' "arson expert" has not yet been qualified to provide jurors with expert opinion testimony.  *United States v. Urena*, 659 F.3d 903, 908-909 (9th Cir. 2011)(a district court may normally refuse to permit expert testimony from an expert not previously designated before trial in the pretrial conference).

E.    Fact Witnesses

On April 20, 2012, defendants' joint witness list listed twenty-four fact witnesses, and names for twenty-two witnesses.  No reports of these witnesses' statements have been provided the government.

If reports were prepared of these defense witness's statements by Boise, Idaho private investigator David Freeman of Freeman and Associates, and Boise, Idaho, public land and natural resource law attorney W. Allan Schroeder, they should be provided to the government.  Fed. R.Crim.P. 16.(b) and 26.2.

In *United States v. Urena*, 659 F.3d at 908-909, the Ninth Circuit held that "[t]he district court also has unquestioned discretionary power to exclude evidence that should hve been produced in reciprocal discovery.  *See United States v. Moore*, 208 F.3d 577, 578 (7th Cir. 2000)("[C]ourts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases." (citing *Taylor v. Illinois*, 484 U.S. 400 (1988))."

F.    Motion to Disclose Alibi Witnesses

The government has also filed a motion for an order requiring defendants to disclose notice of alibi defense (CR 34, 41).   Defendants response to the motion did not disclose any alibi witnesses, and the government replied (CR 40).

At an August 11, 2011, hearing, the government agreed with Mr. Blackman that alibi evidence is evidence presented by the defense to corroborate defendant's denial of being where the government

**UNITED STATES' TRIAL MEMORANDUM**                                      **Page 25**

charges him to be (CR 44, TR at 31).  Defendants were order by U.S. Magistrate Judge Coffin to provided such alibi evidence to the government (CR 44, TR at 42 (Mr. Blackman: "Your honor, let me say for the counts of the indictment that involve discrete events, I think we all understand, and we share an understanding about what constitutes an alibi, and what our obligations are, and what the government's notice is required to include.")

The government has not received any notice of alibi or alibi evidence from defendants which would place them at the locations different from where government witnesses place them at on September 30, 2001, August 22,-24, 31, 2006.  *See* Third Witness List by USA (CR 91).

G.    Motion and Hearing Concerning Government's Expert Witnesses

After being provided a list of potential expert witnesses, on January 17, 2012, defendants moved to exclude ten of the experts' from testifying (CR 59).[10]  The government's response and notice was filed on January 31, 1012 (CR 60, 61).[11]  The parties were ordered to provide experts' "CVs" and reports (CR 62).

The government's list consisted of twelve traditional experts witnesses regarding fire cause, tracking, depredation, and lightning data, and fourteen fact witnesses whose potential expertise pertained to air observations, fire behavior and sources, costs of fire suppression and investigation, damages, fire suppression and safety, and FAA regulations (CR 78 at 2-3).

----

[10]They were Joe Flores, Daniel Gonzalez, Janice Madden, John Megan, Fred McDonald, Chuck Miller, Steven F. Morefield, Marvin L. Plenert, Jeffery Rose, and John Bird.

[11]They were Charlie Martin, Jeff Stampfly, Lynn Miracle, Carrie Bilboa, Charles Miller, Janice Madden, Gary White, John Bird, Joe Flores, Jeffrey Rose, Daniel Gonzalez, a lightning data expert (Ron Holle), Joe Bates, Bill Lampert, Lance Okeson, Joe Glascock, Brett Dunten, Ryan Hussey, Chad Rott, Lisa Megargee, Jonathan Manski, Dave Ward, Dave Toney, Steven Morefield, Patrick Darlying and Warren Silberman.

**UNITED STATES' TRIAL MEMORANDUM**                                              **Page 26**

On February 13, 2012, AUSA Sgarlata replaced AUSA Potter (CR 64).  On February 21, 2006, the Court heard testimony of Gary White, Carrie Bilboa and John Bird, and continued the *Daubert* hearing until March 5, 2012 (CR 70).   On March 1, 2012, the government submitted a reduced list to eight witnesses it sought to be qualified to provide jurors with expert opinion evidence (CR 77).[12]   Defendants did not challenge the expertise of three of the witnesses, Rose, Gonzalez and Manski, about depredation issues.  CR 76, TR 197.

After a second day of hearing, the Court found "[t]here can be little reasonable argument that the government's propose experts are qualified in their respective fields of expertise," and ruled that Gary White, Carrie Bilboa, John Bird, Charley Martin, and Lance Okeson were qualified to provide jurors with expert opinion evidence (CR 78 at 5-9).

The Court was not satisfied that  Joe Bates, an air tactical group supervisor with experience in air support in fighting wildfires, could opine that the fires were human caused.  *Id.* at 9-10.  However, Bates can testify that, in his opinion, the fires he observed were "fairly unique" considering the distance from the main fire and lack of open flame. *Id.* at10.

The government moved for clarification as to the scope of White's expert witness opinion testimony (CR 85), and defendants filed a response (CR 86).  The Court granted the motion by ruling White can also testify as to the causes of ignitions 1-7 and 9 (CR 87).

H.    Defendants' Expert Witness

The Court ordered defendants to provide experts' "CVs" and reports by February 22, 2012 (CR 62).  On February 14, 2012, defendants provided the government Roy Hogue' "CV."  Hogue was in court for the *Daubert* hearings on February 21 and March 5, 2012, but did not testify.

--------

[12]They were John Bird, Lance Okeson, Charley Martin, Gary White, Jeffrey Rose, Daniel Gonzalez, Jonathan Manski and Joe Bates.

**UNITED STATES' TRIAL MEMORANDUM**                                              **Page 27**

On April 20, 2012, Roy Hogue was listed as defense witness whose testimony was to be a "critique of BLM investigations of 2006 fires; observations and conclusions about nature, origin and cause of 1999, 2001, 2005, and 2006 fires referenced in the indictment." On May 4, 2012, the same day the parties were to supply the Court with objections and motions in limine (CR 81), the defendants provided the government Hogue's reports.

Before Hogue opines on the quality of fire cause experts opinions, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny requires the defendants to demonstrate, pretrial, that proposed expert testimony meets their criteria for admissibility.

       I.      <u>Government's Witness List and Exhibit Lists</u>

The government has filed three witness lists to ensure defendants' had adequate notice of who could testify against them (CR 33, 75, 91). The government also identified 235 exhibits (CR 90). The documents will be amended following the Court's rulings on pending motions and because of the reduction of charges in the Superseding Indictment.

       J.      <u>Anticipated Evidentiary Issues</u>

The following issues may required additional evidentiary rulings from the Court.

**Impeachment for Prior Convictions of Dishonesty – Fed. R. Evid. 609**

On May 22, 2012, a jury in Harney County found Steven Hammond was guilty of "unsworn falsification." Ore.Rev. Statute 162.085. Circuit Court Judge Cramer sentenced him to 18-month probationary sentence, a $1,000 fine and $168 in assessments.

Should defendant Steven Hammond testify, the government would impeach his testimony under FRE 609(a)(2) by either asking him or offering certified copies of the charging instrument and judgment.

**UNITED STATES' TRIAL MEMORANDUM**                     **Page 28**

FRE 609 (a)(2) states in pertinent part, "(a) In General.  The following rules apply to attack a witness's character for truthfulness by evidence of a criminal conviction (2) for any crime, regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness admitting – a dishonest act or false statement.

ORS 162.085, Unsworn Falsification provides that: "(1) A person commits the crime of unsworn falsification **if the person knowingly makes any false written statement to a public servant in connection with an application for any benefit.**  (2) Unsworn falsification is a Class B misdemeanor."  (Boldness supplied).

The elements set forth in the statutory language makes readily apparent defendant Steven Hammond was convicted of a "dishonest act or false statement."  Accordingly, should he testify the government will ask him if he has been convicted of a crime of dishonesty; then ask he what was that crime.

**FRE 404(b) Evidence**

The government will offer testimony from witnesses "inextricably intertwined" with defendants' charges that were other crimes (*e.g.,* defendant Steven Hammond shooting at several deer on public land without a hunting license; defendant Steven Hammond admission to igniting fire(s) in the Krumbo Butte area to purportedly preserve his grazing allotment while a county wide burn ban was in effect).

At least two weeks before trial, a notice will be provided defendants of any evidence the government intends to offer which could also be considered evidence admissible under FRE 404(b),

**UNITED STATES' TRIAL MEMORANDUM**                                              **Page 29**

and could require an admissibility ruling by the Court's application of Federal Rules of Criminal

Procedure 402, 403 and 404(b) of the Federal Rules of Evidence.[13]

**Stipulations**

At least two weeks before trial and after reviewing defendants' pretrial trial documents, the

government will submit a list of proposed stipulations on those issues which are not in dispute.

## VII.  CONCLUSION

The Government submits there will be adequate evidence to warrant a jury finding beyond a

reasonable doubt that defendants committed the crimes charged in the Superseding Indictment.

DATED this 24th day of May 2012.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney


*/s/ Frank R. Papagni, Jr.*
FRANK R. PAPAGNI, JR.
Assistant United States Attorney

*/s/ AnneMarie Sgarlata*
ANNEMARIE SGARLATA
Assistant United States Attorney

---

[13]Rule 404(b) provides in pertinent part:  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible (continued.. for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . ."

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 30**