IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 6:10-cr-60066-HO |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN DWIGHT HAMMOND, DWIGHT LINCOLN HAMMOND, JR., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

The government originally charged defendants Steven Hammond and Dwight Hammond, Jr., with conspiracy to commit arson, several counts of arson and depredation of government property by fire over a 20+ year period in opposition to BLM methods. In addition, defendant Dwight Hammond was charged with several counts of operation of an aircraft without a current medical certificate and operation of an aircraft within a restricted area, as well as

threatening to assault a federal officer.[1] Defendants were also charged with tampering with a witness. Essentially, the government alleged defendants ignited numerous grassland fires between 1982 and 2006 to benefit their cattle ranching operation.

On May 17, 2012, the government obtained a superseding indictment. The superseding indictment charges the following:

### COUNT 1

Count 1 - Conspiracy with three objects: (1) use of fire to damage or destroy real and personal property of the United States causing risk of injury to people; (2) damage and depredation in excess of $1,000 against property owned and possessed by the United States; damage and destruction of real and personal property used in interstate commerce or in activity affecting interstate commerce.

The introduction to the conspiracy charge alleges:

> During all times relevant to this count, Defendant DWIGHT LINCOLN HAMMOND, JR. his wife and their son, defendant STEVEN DWIGHT HAMMOND, owned and operated Hammond Ranches, Inc. (HRI), a cattle ranch near the eastern Oregon community of Diamond. Defendant DWIGHT LINCOLN HAMMOND, JR. was President of HRI and defendant STEVEN DWIGHT HAMMOND was Vice-President and lived on the ranch with his parents.
> HRI owned private grazing land and leased other private and public lands. HRI purchased a permit which authorized HRI cattle to graze on property owned and possessed by the United States, and the United States Department of the Interior's (DOI), Bureau of Land Management (BLM) located in the Burns District.
> During all times relevant to this count, the Burns District BLM had a prescribed burn program which used

---

[1] Two of the threat charges were against both defendants.

Page 2

fire for habitat improvement, ecosystem restoration and maintenance, and reduction of hazardous fuels. Private owners' participation in the program was voluntary. Many private landowners had prescribed burn plan agreements with the Burns District BLM to cooperatively control the conversion of shrub and grasslands to juniper woodland on private and public lands in the Steens Mountain area.

Burns District BLM would not conduct a prescribed burn unless the burn plan complied with the National Environmental Policy Act, supported the Burns District BLM Resource Management Plan, accounted for the safety of the public and firefighters, and containment of fire to the areas identified for treatment.

BLM paid most of the cost of preparing and implementing a prescribed burn agreement. When BLM conducted a prescribed burn, it assumed all liability for the burning.

During all times relevant to this count, the Burns District BLM did not have a prescribed burn plan agreement with HRI and defendants STEVEN DWIGHT HAMMOND and DWIGHT LINCOLN HAMMOND, JR.

The government also alleges nine manner and means to accomplish the objects of the conspiracy including starting fires without a prescribed burn plan with the BLM.

The government further alleges 38 overt acts to carry out the conspiracy. The superseding indictment has reduced the time period down to fire ignitions in 1999, 2001, 2005, and 2006. The government alleges that the BLM district manager Thomas Dyer informed Steven and Dwight Hammond that in the future, fires set by them which were allowed to burn on government property without having a prescribed burn plan agreement with the BLM would be treated as a fire trespass and would result in legal action.

Page 3

## COUNT 2

Count 2 - Use of Fire To Destroy Property of the United States (2001 Hardie-Hammond Arson). The government alleges defendants (and others) intentionally and maliciously damaged and destroyed, via fire, real and personal property of the United States within and near the Hardie-Hammond grazing allotment in the Steens Mountain Cooperative Management Protective Area.

## COUNT 3

Count 3 - Use of Fire to Damage and Destroy Property of the United States (2006 Lower Bridge Creek Arson).

## COUNT 4

Count 4 - Use of Fire to Cause more than $1,000 of Damage and Depredation against property of the United States (2006 Lower Creek Bridge fire).

## COUNT 5

Count 5 - Use of Fire to Damage or Destroy Property of the United States (2006 Krumbo Butte Arson).

## COUNT 6

Count 6 - Use of Fire to Cause more than $1,000 of Damage and Depredation against Property of the United States (2006 Krumbo Butte Arson).

## COUNT 7

Count 7 - Use of Fire to Damage and Destroy Property of the United States and Creating a Substantial Risk of Injury to any Person (2006 Grandad Arson). The government alleges this fire created risk of injury to one or more persons including but not limited to BLM employees and firefighters, Chad Rott, Lisa Megargee, Lance Okeson and Joe Glascock.

## COUNT 8

Count 8 - Use of Fire to Cause more than $1,000 of damage and Depredation against property of the United States (2006 Grandad Arson).

## COUNT 9

Count 9 - Tampering with a Witness (Frenchglen Hotel). The government alleges that defendant Steven Hammond threatened BLM employee and firefighter Joe Glascock by stating, "This could get ugly and could be a sticky situation. You know management cycles through here all the time. I know that you want to be part of this community. If you want to stay here, you will make this go away. If I go down, I'm taking you with me. *** You lighted those fires, not me." The government alleges defendant made the statement to prevent Glascock from communicating, to law enforcement,

information related to fire destruction offenses committed by defendants.

Defendants move in limine to:

(1) strike all allegations from the Superseding Indictment filed on May 17, 2012 regarding "the Burns District BLM . . . prescribed burn program;" and

(2) exclude any and all evidence regarding "the Burns District BLM ... prescribed burn program."

The defendants also move to strike the allegation

> On or between August 25, 2005 and August 30, 2005, defendant STEVEN DWIGHT HAMMOND started a fire on property near or along the fence line which burned onto the private property of William, "Bill," Otley of Diamond Ranches, Inc."[2]

In the alternative, defendants move for a continuance of at least 60 days to investigate and prepare for trial in the event the alleged Burns District BLM prescribed burn program is considered relevant or admissible.

The government obtained a superseding indictment to reduce the number of charges from 19 to 9, reduce the objects of the conspiracy from 10 to three, and to reduce the number of overt acts from 48 to 38, as well as specifically to allege facts to establish

---

[2] Defendants contend that the original indictment made no such allegation and that the government has indicated that it cannot prove the location where defendants started the fires on August 22 and 23 2005. However, the government is not seeking to prove criminal liability for the fires in August 2005 themselves, only that they are part of the overt acts of the conspiracy.

Page 6

the maximum penalty under 18 U.S.C. § 844(f)(1) and (2). Defendants argue, however, that the government also

> introduces for the first time an entirely new allegation: that defendant Steven Hammond "started a fire on property near or along the fence line which burned onto private property owned by William, 'Bill,'' Otley of Diamond Ranches, Inc. More important, it introduces into the case an alleged "Burns District BLM… prescribed burn program." The Superseding Indictment does not merely introduce this subject to the case, it makes it the centerpiece of the allegations against the defendants.

Defendants contend that the history and very existence of an alleged Burns District BLM prescribed burn program during the times relevant was problematic; that if such a plan existed during the times relevant, its relevance to a landowner's right to burn on his private land was unknown, but doubtful; and, that the defendants and Burns District BLM personnel had at least a twenty year history of conferring about prescribed burns that appear to have continued past the last time relevant to the allegations in the superseding indictment. Defendants further contend they have little to no information in their discovery concerning the prescribed burn program and, as a result, introducing it into the case now requires further discovery if the allegations are not stricken.

The defense contends that the prescribed burn allegations are irrelevant to whether they intentionally and maliciously damaged or destroyed public land or conspired to do so. Defendants further argue that the allegations are surplusage. At the same time, however, defendants contend that the allegations materially change

the nature of the charges against them necessitating a continuance given that the superseding indictment was filed less than 30 days prior to trial.

The court does not agree that the purported "new theory of prosecution or new set of factual allegations" requires further discovery or a set-over of the trial. The original indictment referred to BLM land use and management methods and specifically alleged that "Because the BLM 'takes too long' to complete the required environmental studies before doing controlled rangeland burning, the Hammonds have opposed BLM management of the rangelands and have burned the rangelands on their own." In addition, the witness summaries provided to defendants highlighted testimony regarding cooperative prescribed burns and prescribed burn agreements and treatments as well as NEPA requirements. The nature of the conspiracy and other charges remain the same.

However, the court does agree that many of the allegations are surplusage, because many allegations are more argumentative than elements of an offense. Accordingly, the court grants the motion to strike allegations regarding the Burns District BLM prescribed burn program. The court denies the motion to exclude evidence regarding the Burns District BLM prescribed burn program. In addition, the court agrees that proof of an act to effect the object of the conspiracy is not required by 18 U.S.C. § 844(n) or

§ 844(m) as discussed with respect to defendants motion to strike overt act allegations.

Defendants have moved to strike overt act allegations from count 1 of the superseding indictment. While the court does agree that the overt acts alleged may be relevant, the object and manner and means allegations properly apprise the defendants of the conspiracy charge they must defend. Proof of an overt act is not necessary to obtaining a conviction.

18 U.S.C. § 844(n) requires proof a person conspired to commit any offense under 18 U.S.C. § 844, and makes no reference to an act to effect that object of the conspiracy. Similarly, 18 U.S.C. § 844(m) requires a person to conspire to either use fire or an explosive to commit a federal felony or carry an explosive during the commission of a federal felony, but does not require proof of an act to effect such crime. Accordingly, proof of any of the overt acts is not necessary. Even though relevant to fleshing out the manner and means, the overt act allegations may serve to confuse. Of course, through their motion, the defendants have agreed that proof of an overt act is not necessary and they are precluded from asserting the government failed in this regard if the government obtains a conviction absent the allegations of overt acts. This further demonstrates that the overt acts are surplusage. Accordingly, the overt act allegations are stricken. The court does not intend, by granting this motion, to exclude

evidence related to the overt acts allegations to the extent they are relevant to demonstrating the objects of the conspiracy.

Defendants next move dismiss counts 4, 6, and 8. Defendants contend that the counts are barred by the statute of limitations.

Defendants are charged in counts 4, 6 and 8 with use of fire to cause more than $1,000 of damage and depredation against property of the United States for the alleged 2006 Lower Bridge Creek Arson, 2006 Krumbo Butte Arson and 2006 Grandad Arson in violation of 18 U.S.C. §§ 2, 844(h)(1) and 1361. Defendants maintain that because the statute of limitations for violation of section 1361 is five years and the superseding indictment was returned more than five years after the alleged arsons, the counts must be dismissed.

18 U.S.C. § 844(h)(1) provides that whoever

uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States ...

including a felony which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years.

The underlying federal felony in the superseding indictment is 18 U.S.C. § 1361 which prohibits willful depredation against any property of the United States and if the damage exceeds $1,000, provides a penalty of up to ten years. Except as expressly provided by law, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the

information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282. However, 18 U.S.C. § 3295 expressly provides that offenses under 18 U.S.C. § 844(h) shall be instituted no later than 10 years after the date on which the offense was committed. Accordingly, even assuming that the charges in the superseding indictment do not relate back to the original indictment, counts 4, 6 and 8 are timely instituted.[3] The motion to dismiss counts 4, 6 and 8 is denied.

Defendants move to dismiss count 3 or 7 and count 4 or 8 as multiplicitous. Count 3 charges defendants with use of fire to damage or destroy government property in violation of 18 U.S.C. § 844(f)(1) related to the alleged 2006 Lower Bridge Creek arson and count 7 charges defendants with use of fire to damage or destroy property of the United States and creating a substantial risk of injury to any person in violation of 18 U.S.C. § 844(f)(1) and (2) related to the alleged 2006 Grandad arson. Count 4 charges defendants with using fire to cause more than $1,000 damage and depredation against property of the United States in violation of 18 U.S.C. § 844(h)(1) related to the alleged 2006 Lower Bridge Creek arson (with section 1361 underlying) and use of fire to cause more than $1,000 of damage and depredation against property of the United States in violation of 18 U.S.C. § 844(h)(1) related to the

---

[3] At any rate, the court agrees, for the reasons stated in the government's response (#131) that the statute of limitations on counts 4, 6, and 8 is tolled and thus still timely even under 18 U.S.C. § 3282.

Page 11

alleged 2006 Lower Bridge Creek arson (with section 1361 underlying) related to the alleged 2006 Grandad arson.

Defendants contend that counts 3 and 7 are for violations of the same statute for the same conduct as are counts 4 and 8. Defendants argue that the Lower Bridge Creek fire and Grandad fire are part of the same fire complex. Defendants motion is more appropriately raised as argument before the jury rather than as seeking dismissal as a matter of law. The government alleges two separate fires in two separate locations set on two separate occasions that did not join. The counts are not multiplicitous and the motions are denied.

Finally, defendants move to dismiss counts 1, 7 and 9 of the superseding indictment. Defendants contend that because these counts list multiple persons subject to injury, multiple statements constituting threats and multiple theories of witness tampering, each count is duplicitous compromising their right to know the charges against them and protection against double jeopardy. However, carefully crafted jury instructions and special verdict form will protect defendants rights by requiring unanimous identification of each person facing risk of injury resulting in only a single sentencing enhancement regardless of the number individuals the jurors agree faced such risk. Similarly, special verdicts will require the jury to agree as to whether Steven Hammond's alleged statement (it is an alleged single statement-not

Page 12

different statements) was intimidation or corruption against an identified person.

## CONCLUSION

Defendants' motions in limine or to continue (#111), to strike overt acts (#114), and to dismiss counts (#s 115, 116, 117, and 118) are granted in part and otherwise denied as noted above.

DATED this  24th  day of May, 2012.

*[signature]*
United States District