S. AMANDA MARSHALL, OSB #953473
**United States Attorney**
**District of Oregon**
**FRANK R. PAPAGNI, JR., OSB #762788**
**ANNEMARIE SGARLATA, OSB #065061**
**Assistant United States Attorneys**
405 E. 8th Ave., Suite 2400
**Eugene, OR  97401**
**Telephone:  (541) 465-6771**
**Facsimile:  (541) 465-6917**
frank.papagni@usdoj.gov
annemarie.sgarlata@usdoj.gov
**Attorneys for United States of America**

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 6:10-CR-60066-HO** |
| v. | **UNITED STATES' NOTICE OF INTENT TO OFFER POTENTIAL EXTRINSIC ACT EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b)** |
| **STEVEN DWIGHT HAMMOND and DWIGHT LINCOLN HAMMOND, JR.,** | |
| **Defendants.** | **Trial Date: June 12, 2012 @ 9:00 AM** |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon and Frank R. Papagni, Jr. and AnneMarie Sgarlata, Assistant United States Attorneys, respectfully notifies defendants of its intent to offer potential extrinsic act evidence pursuant to Federal Rules of Evidence (FRE) 404(b).

\ \ \

\ \ \

\ \ \

**UNITED STATES' NOTICE OF INTENT TO OFFER POTENTIAL EXTRINSIC ACT EVIDENCE UNDER FRE 404(b)**                                    **Page 1**

**Evidence Inextricably Intertwined with Case
and FRE 404(b) Notice to Defendants**

The admissibility of evidence of an accused's extrinsic acts is dependent on the reason(s) why it is being offered and whether its probative value is substantially outweighed by its prejudicial impact.  FRE 403; 404(b).

Rule 404(b) requires reasonable notice of the general nature of any such evidence that the prosecutor intends to offer.  This notice is timely because it follows an April 20, 2012, filing by the government of a witness list containing detailed summaries of anticipated testimony (CR 91) that include the other acts addressed in this Notice.  This Notice also follows defendants' April 20, 2012 Memorandum listing, for the first time, a variety of defenses they intend to raise at trial.  This Notice of intent to offer other act evidence addresses issues raised for the first time in that memorandum(CR 125).

**Evidence of Defendants' Motive, Intent, Knowledge, Plan,
Preparation, Identity, Absence of Mistake or Accident
(or Negligence) for 2001 Hardie-Hammond Arson**

On September 30, 2001, shortly after defendant Steven Hammond was seen shooting at deer on public land by Gordon Choate, Dennis and Dustin Nelson, he provided matches to Dusty Hammond along with Dwight Hammond, Russel Hammond and Jacon Taylor, whereupon several fires were set near BLM property at about 10:00 a.m. that burned public land.  *See* Counts 1 and 2.

Defendants claim that this fire "resulted from burns on private Hammond Ranches, Inc. that the BLM authorized, but which escaped on to public land as a result of nothing worse than negligence."  (CR 125); *Def. Joint Trial Memo. at 3.*

Defendants' accomplice/son/brother, Russel Hammond recently told his daughter that the defendants were in a lot of trouble, and his son Dusty knew where and who started all the fires on the

**UNITED STATES' NOTICE OF INTENT TO OFFER POTENTIAL EXTRINSIC
ACT EVIDENCE UNDER FRE 404(b)**                                                      **Page 2**

mountain while he was living there.  Russel Hammond described a hunting trip with his son Dusty

Hammond and claimed Dusty and another kid were shooting way too far at some bucks that were too

small, and the only thing he was doing was trying to clean up their mess.  Russel Hammond's

estimation of when this occurred and his reference to the "other" hunters correlates with the 2001

arson.

### Extrinsic Act Evidence Inextricably Intertwined with
### Counts 1 and 2 and Admissible under FRE 404(b)

On March 9, 2000, defendant Steven Hammond was convicted by United States Magistrate

Judge Hubel in *United States v. Steven Hammond* of Interference with Lawful Use of Public Land,

Case Number 00-M-2030, and received a three-year probationary sentence and a $,1500 fine.  The

offense occurred on October 11, 1999, and as here, involved a hunting guide, John Witzel, taking two

clients deer hunting on public land which was near and adjacent to Hammond Ranches property.[1]

During trial, Steven Hammond admitted to verbally intimidating a hunting group, and stated

he believed that he had the moral right to chase the hunters away because the deer feed on his alfalfa.[2]

*See* FRE 801(d)(2)(A); 404(b) (financial motive for offense).   Magistrate Judge Hubel found "[i]t's

clear to me that there was intimidation going on trying to dissuade the hunters from being in that

location." (RT at 133).

---

[1]John Witzel has been listed on all three government witness lists (CR 33, 75, 91).  John Witzel advised Magistrate Judge Hubel that he was worried about future confrontations and is afraid that Steven Hammond will be more aggressive.

[2]Steven Hammond appealed his conviction to United States District Court Judge Hogan. He was represented by Burns, Oregon attorney Stephen D. Finlayson, and Portland, Oregon attorney Lisa K. Day.  Defendant filed an excerpt of record which contained a transcript of Defendant's testimony and in-court statements. Defendant withdrew his appeal on September 14, 2000.

Steven Hammond's trial testimony before Magistrate Judge Hubel is admissible at trial here because his statements are relevant admissions of a party opponent that tend to show the Hammonds have a financial motive for the offense. *See* FRE 801(d)(2)(A) and 404(b). As such, the government may offer as exhibits in its case-in-chief or for impeachment or rebuttal purposes, Steven Hammond's conviction documents and relevant statements from that judicial proceeding to establish his motive for the 2001 Hardie-Hammond arson. This evidence will be offered under FRE 404(b), not FRE 609.

Similarly, as the government noted in its Response to Defendants' Motion to Exclude Witness Summaries, on September 9, 2000, former Oregon State Police Trooper Rod Spannaus heard defendant Steven Hammond ask at an Oregon Hunters' Association meeting to be paid for feeding wildlife who grazed on Hammond Ranches property. Such evidence also is admissible as an admission by a party opponent. *See* FRE 801(d)(2)(A). It is relevant because it tends to show Steven Hammond had a financial motive for committing the arson offenses charged in the Superseding Indictment. FRE 404(b) (financial motive for offense).[3]

Before September 30, 2001, Defendant Steven Hammond had asked Brett Jantze for $5,000 to let two hunters hunt on Hammond Ranches property in 2001. *See* FRE 801(d)(2)(A); 404(b) (financial motive for offense).

Before September 30, 2001, defendants' grandson/nephew Dusty Hammond, had heard them talking about lighting fires when hunters were on the mountain. *See* FRE 801(d)(2)(A) – Admissions

---

[3]On September 9, 2000, defendant Steve Hammond asked the Oregon Hunter's Association at a meeting at the Powerhouse Restaurant in Burns, Oregon for compensation for feeding wildlife on Hammond Ranches.

by party-opponent of previously igniting fires when hunters were on the mountain (BLM property where Hammonds had grazing permits).

On September 30, 2001, defendant Dwight Hammond spoke with Gordon Choate and knew he and his hunting party were camped nearby.  Choate was able to identify defendant Dwight Hammond in 2001 because twice in the past, and particularly in 1996, soon after meeting Dwight Hammond while hunting on public lands near Hammond Ranches' property, there was a wildfire. FRE 801(d)(2)(A) and (E).   Likewise, Dennis Nelson who too has hunted all his life, has never been burned out of a hunting trip by a wildfire.

On or about October 1, 2001, defendants and Susan Hammond told Dusty Hammond not to say anything about the fires the previous day because uncle Steve, grandpa Dwight and his dad, Rusty, would go to jail.

On March 26, 2003, defendant Steven Hammond pointed at several locations on the map and told BLM employees Bird and Swisher that he had set this fire and that fire, and bragged that "you guys never caught me."  *See* FRE 801(d)(2)(A) and (E); 404(b) (financial motive for offense).

In March 2004, 16-year old Dusty Hammond was living at Hammond Ranches, Inc.. Defendant Steven Hammond, in the presence of Dwight and Susan Hammond, sandpapered off the chest of  Dusty Hammond, a couple of initials Dusty had tattooed on himself.  On March 16, 2004, defendant Steven Hammond told Harney County Deputy Needham that "Dusty was lucky that he was not at the ranch when he told on Dwight, Susie or [himself] or there would have been hell to pay and Dusty would have wished he wasn't alive."  The relevancy and admissibility of this extrinsic evidence has been discussed by the parties in previous pleadings (CR 100, 132).

The foregoing evidence of defendants' activities is admissible because:

1.      Such evidence is "inextricably intertwined" with defendants' long term plan and motive to start fires when uninvited or non-paying hunters are on public land near property of Hammond Ranches, Inc.. *See e.g., United States v. Beckman*, 298 F.3d 788 (9th Cir. 2002)(evidence of prior drug importation was "inextricably intertwined and also admissible under Rule 404(b)); *United States v. Butcher*, 926 F.2d 811 (9th Cir. 1991)(evidence of drug trafficking was "inextricably intertwined" with possession of the handgun); and

2.      Is admissible under FRE 402, 403 and 404(b).[4]

Rule 402 declares that all relevant evidence is admissible, except as provided by the Constitution, Supreme Court, statute and rule.  Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Rule 404 separately deals with (a) "character" evidence and (b) evidence of other (1) crimes, (2) wrongs, or (3) acts.

"Rule 404(b) is a rule of inclusion – not exclusion – which references at least three categories of other 'acts' encompassing the inner workings of the mind:  motive, intent, and knowledge.  Once it has been established that the evidence offered serves one of these purposes . . . the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative

---

[4]Rule 404(b) provides in pertinent part:  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible (continued.. for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . ."

**UNITED STATES' NOTICE OF INTENT TO OFFER POTENTIAL EXTRINSIC ACT EVIDENCE UNDER FRE 404(b)**                                                    **Page 6**

evidence." *United States v. Curtin*, 489 F.3d at 944, citing *Huddleston v. United States*, 485 U.S. 681 (1988). "This rule provides that evidence of other crimes, wrongs, or acts is not admissible to prove character but may be admissible for other specified purposes such as proof of motive." *Id.*

Moreover, the government can offer in its case-in-chief evidence in anticipation of an expected defense. *United States v. Curtin,* at 940, citing *United States v. Veltre*, 591 F.2d 347 (5th Cir. 1979).

The government is not required to prove "other act" evidence by a preponderance of the evidence, but need only introduce evidence sufficient to support a finding by the jury that defendant committed the similar act. *United States v. Plancarte-Alvarez*, 366 F.3d 1058 (9th Cir 2004).

As proponent of the evidence, the government has identified the specific purpose or purposes for which it is offering the evidence of other crimes, wrongs or acts. *Curtin,* at 958. Here, the Rule 404(b) evidence is relevant proof of defendants' motive, intent, preparation, plan, and knowledge for committing the offenses described in Counts 1 and 2 of the Superseding Indictment.

Testimony about defendants and their prior activities to receive payment or prevent hunters from hunting on public land before September 1, 2006, is clearly relevant and its probative value as to Count 1 and 2, and is not *substantially outweighed* by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FRE 403; *see also United States v. Romero*, 282 F.3d 683 (9th Cir. 2002) (defendant's prior drug dealing admissible to rebut defense that defendant did not intend to deal drugs).

When such "other crimes, wrongs, and bad acts" evidence is offered, the government requests the Court give a "limiting instruction" (included in Government's Requested Jury Instructions, Ninth

**UNITED STATES' NOTICE OF INTENT TO OFFER POTENTIAL EXTRINSIC**
**ACT EVIDENCE UNDER FRE 404(b)**                                              **Page 7**

Circuit Model Instruction 2,.10 and 2.11, CR 141, pp. 23-24) that such evidence not be considered to prove bad character or a disposition to commit crimes.

### Evidence of Defendants' Motive, Intent, Knowledge, Plan, Preparation, Identity, Absence of Mistake or Accident (or Legal Justification) for 2006 Arsons

In 2005, fires on public lands caused BLM employees Bird and Toney to request permission from defendant Steven Hammond for firefighters to travel across Hammond Ranches, Inc. property. Defendant Steven Hammond did not only deny permission but explained that he wanted the mountain to burn.  *See* FRE 801(d)(2)(A) and (E); 404(b) (financial motive for offense).  The relevancy and admissibility of this extrinsic evidence has been discussed by the parties in previous pleadings (CR 144, 146).

Several days after one of the 2005 fires were out, defendant Steven Hammond admitted to Bill Otley having started fires which burned 10 to 20 acres of Otley's property.

On August 8, 2006, Harney County Fire Chief Chris Briels issued a county-wide ban on open burning which was in effect when defendant Steven Hammond, without a waiver, ignited fire(s) and burned property near Krumbo Butte reportedly to save his grazing allotment.  FRE 404(b) (plan, preparation, absence of mistake or accident, intent and motive).

On August 17, 2006, defendant Steven Hammond told BLM employee Joe Glascock that he would start fires after a drying lightning storm, and that he and his dad Dwight Hammond, had been doing it for years; and the next time there was dry lightning in the area, not to be surprised if a fire occurred in the Bridge Creek area.  *See* FRE 801(d)(2)(A) and (E); 404(b) (preparation, plan, motive, knowledge, identity, absence of mistake or accident).

On August 23, 2006, BLM employee Chad Rott recognized Steven Hammond as the driver of a pickup truck that pulled up behind his engine because of what Hammond had told him when Rott had strayed onto Hammond Ranches property while trying to reach a wildland fire in 2005.  FRE 404(b) (identity).

On August 24, 2006, less than five hours after allegedly threatening, intimidating and attempting to corruptly persuade Joe Glascock at the Frenchglen Hotel, and after being stopped earlier by Harney County Sheriff Glerup, defendant Steven Hammond told California Dept. of Forestry employee Chris Norton, that he didn't want anyone from the fire department on his land "whatsoever, for any reason," and while patting his rifle, said he would exercise zero tolerance, regardless of the firefighter's intent, be it accidental or intentional.  *See* FRE 801(d)(2)(A); 404(b) (intent, motive and knowledge as to Count 9).

An instruction should be given to jurors after Norton testifies that this evidence can be considered only as it is relevant to defendant Steven Hammond's intent, motive and knowledge as charged in Count 9, Tampering with a Witness.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

**UNITED STATES' NOTICE OF INTENT TO OFFER POTENTIAL EXTRINSIC ACT EVIDENCE UNDER FRE 404(b)**                                                    **Page 9**

**Conclusion**

Having previously been advised in government pleadings of its intent to offer the foregoing evidence as being inextricably intertwined with the charged offenses, defendants are now reasonably noticed that such evidence is also admissible under FRE 404(b).

DATED this 1st day of June 2011.

S. AMANDA MARSHALL
United States Attorney


/s/ Frank R. Papagni, Jr.
FRANK R. PAPAGNI, JR.
Assistant United States Attorney

/s/ AnneMarie Sgarlata
ANNEMARIE SGARLATA
Assistant United States Attorney