BILLY J. WILLIAMS, OSB #901366
Acting United States Attorney
District of Oregon
FRANK R. PAPAGNI, JR., OSB #762788
ANNEMARIE SGARLATA, OSB #065061
Assistant United States Attorneys
frank.papagni@usdoj.gov
annemarie.sgarlata@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708
Telephone:  (541) 465-6771
Facsimile:  (541) 465-6917
Attorneys for the United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:10-CR-60066-AA |
| Plaintiff, | **UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM** |
| v. | (Sentencing:  October 7, 2015 @ 10:00 am) |
| STEVEN DWIGHT HAMMOND, and DWIGHT LINCOLN HAMMOND, JR., | |
| Defendants. | |

The United States of America, by Billy J. Williams, Acting United States

Attorney for the District of Oregon, and through Frank R. Papagni, Jr. and

AnneMarie Sgarlata, Assistant United States Attorneys, respectfully submits its

Supplemental Sentencing Memorandum endorsing its Sentencing Memorandum filed in October 2012.  ECF 204; Government Exhibit 1.

## TRIAL

In June 2012, after an eight-day trial, jurors returned guilty and not guilty verdicts on all but four counts.  ECF 183; Government Exhibit 2 at 14-28.

The jury convicted Steven Hammond of two counts and Dwight Hammond of one count of maliciously damaging real property of the United States by use of fire, in violation of 18 U.SC. § 844(f)(1), based on their respective roles in the September 2001 and August 2006 fires.

> The Ninth Circuit Court of Appeals later summarized their crimes:
>
> "The Hammonds have longed ranched private and public land in Eastern Oregon.  Although they lease public lands for grazing, the Hammonds are not permitted to burn it without prior authorization from the Bureau of Land Management.  Government employees reminded Steven of this restriction in 1999 after he started a fire that escaped onto public land.
>
> But in September 2001, the Hammonds again set fire on their property that spread to nearby public land.  Although the Hammonds claimed that the fire was designed to burn off invasive species on their property, a teenage relative of theirs testified that Steven had instructed him to drop lit matches on the ground so as to "light up the whole country on fire."  And the teenager did just that.  The resulting flames, which were eight to ten feet high, spread quickly and forced the teenager to shelter in a creek.  The fire ultimately consumed 139 acres of public land and took the acreage out of production for two growing seasons.
>
> In August 2006, the lightning storm kindled several fires near where the Hammonds grew their winter feed.  Steven responded by attempting back burns near the boundary of his land.  Although a burn ban was in effect, Steven did not seek a waiver.  His fires burned about an acre of public land."

*United States v. Hammond*, 742 F.3d 880, 881 (9th Cir. 2014), *cert denied*, 135 S.Ct. 1545 (2015).

**DEFENDANTS' AND GOVERNMENT'S AGREEMENT**

After having been found guilty of violating 18 U.S.C. § 844(f)(1), the Hammonds knew they were to "be imprisoned for not less than 5 years, and not more than 20 years, . . .."  And, while jurors were still deliberating on the remaining four charges, they made an agreement with the government which concluded the trial.  Exhibit 2 at 25-28.

The government agreed to:  (1) move to dismiss the four counts which jurors had not yet returned verdicts; (2) not to recommend more than the mandatory minimum prison sentences for the arsons that jurors unanimously found they had committed; (3) recommend Defendant Steve Hammond serve the sentences for the two arsons he committed concurrently; and (4) allow the Defendants to remain released on conditions pending their sentencing.  *Id.* at 25-26.

Before adjourning, the government's attorney stated:  "I want to make sure the Hammonds understand that under the statute the government is obligated to recommend a five-year mandatory minimum term of imprisonment.  * * * I think your lawyer has told you that, but I wanted the record to reflect that you gentlemen have been so warned what the sentence is going to be that I'm going to be asking for."  *Id.* at 28.

Defendants accepted the jury's verdicts and agreed to waive "any and all" appellate rights and 2255 rights, except for ineffective assistance of counsel.   They assured the trial court that they had consulted with their lawyers and their decisions were voluntary.  *Id.* at 26-27.

**SENTENCING**

Over the government's objection, the trial court advanced the Hammonds' sentencing hearing forty-two days. ECF 202, 206; Government Exhibit 3 at 20.

In its sentencing memorandum and at sentencing, as promised, the government recommended that Defendants each receive a five-year mandatory minimum term of imprisonment. Exhibit 1, Exhibit 3 at 10.

At sentencing, the trial court agreed the evidence presented at trial "sufficiently supported" the jury's guilty verdicts. Exhibit 3 at 21. But, the Court did not impose the sentences mandated by the statute, enacted by Congress, signed by the President and violated by the Defendants. *Id*. at 26. The trial court opined that "to do so would result in a sentence which (was) grossly disproportionate to the severity of the offenses" and would violate the Eighth Amendment. *Id*.

Lacking a presentence report, the trial court consulted with the probation officer then determined that Dwight Hammond's sentencing guideline range was 0 to 6 months and Steven Hammond's range was 8 to14 months. ECF 211 and 213; Exhibit 3 at 22-25.

The Court sentenced Dwight Hammond to three months of imprisonment and Steven Hammond to twelve months and one day. ECF 210, 212; Exhibit 3 at 27-29. After being sentenced, Dwight and Steven Hammond waived the preparation of a presentence report. Exhibit 3 at 32.

## APPEAL

Because "[a] . . . sentence mandated by statute is not a suggestion that courts have discretion to disregard," the government appealed, and the Ninth Circuit Court of Appeals found the sentences imposed by the trial court were illegal and overturned them. *United States v. Hammond*, 742 F.3d at 884, *citing United States v. Wipf*, 620 F.3d 1168, 1169-70 (9th Cir. 2010). It ruled that "[t]he court below was bound to sentence the Hammonds to five-year terms of imprisonment. *See* 18 U.S.C. § 844(f)(1)." *Id.*

Moreover, the Ninth Circuit disagreed with the trial court's assessment of the danger posed by the Defendants' criminal conduct:

> "Even a fire in a remote area has the potential to spread to more populated areas, threaten local property and residents, or endanger the firefighters called to battle the blaze. The September 2001 fire here, which nearly burned a teenager and damaged grazing land, illustrates this very point." *Id.*

Finding the trial court "erred by sentencing the Hammonds to terms of imprisonment less than the statutory minimum," the Ninth Circuit "vacate(d) the sentences and remand(ed) for resentencing in compliance with the law." *Id.* at 885.

## SENTENCING RECOMMENDATIONS

The government, in compliance with its agreement with the Defendants, once again recommends they be sentenced to no more and no less, than the five- year prison terms mandated by 18 U.S.C. § 844(f)(1). The facts supporting the government's recommendation for these sentences are set forth in the government's 2012 sentencing memorandum. ECF 204; Exhibit 1 at 4-9.

## Advisory Sentencing Guidelines Computation

In 2012, the trial court found there was no need for a presentence report pursuant to Federal Rule of Criminal Procedure 32, and Defendants waived the preparation of a presentence report. ECF 211, 213; Exhibit 3 at 32-33. However, a three-page "unofficial guideline discussion" was presented by the U.S. Probation Office to the Court and the parties eight days before sentencing. *See* Dwight Hammond Letter (9/21/15) to U.S. Probation Officer Robb. Government Exhibit 4.

The Hammonds, the government, and the trial court used this unofficial document when attempting to ascertain Defendants' offense levels, criminal history categories and advisory sentencing guideline ranges. *E.g.,* Exhibit 3 at 19-25.

In 2012, the government calculated Steven Hammond's total offense level to be 18. His prior convictions produced a Criminal History Category of III which resulted in a sentencing guideline range of 33 to 41 months' imprisonment. Exhibit 1 at 9-13. The government determined Dwight Hammond's total offense level to be 7. He had no prior convictions resulting in a Criminal History Category of I. This produced an advisory guideline range of 0 to 6 months' imprisonment. *Id.* at 13-14. But, because U.S.S.G. § 5G1.1(b) requires that the statutorily required mandatory minimum sentence be their advisory guideline sentence, the actual sentencing guideline range for Steven and Dwight Hammond is 60 months' imprisonment. *Id.* at 13-14.

At the Hammonds' resentencing, the government will submit that its 2012 guideline calculations are correct and that pursuant to U.S.S.G. § 5G1.1(b),

Defendants' advisory sentencing guidelines range for violating 18 U.S.C. § 844(f)(1) is 60 months' imprisonment.

The 2015 presentence report (draft) prepared by Senior U.S. Probation Officer Robb, calculates Steven Hammond's advisory sentencing guideline range to be 78 to 97 months' imprisonment, and Dwight Hammond's range to be 63 to 78 months' imprisonment.  The information contained in Officer Robb's report can be appropriately considered by the Court pursuant to 18 U.S.C. § 3661.

**Base Offense Level**

Finding his crimes created a substantial risk of death or serious bodily injury to BLM personnel, Officer Robb determined Steven Hammond's base offense level to be 24 pursuant to U.S.S.G. § 2K1.4(a)(1).

In 2006, there were numerous "dry" lightning fires in the Frenchglen area of Harney County and a burn ban was in effect.   Nevertheless, knowing BLM firefighter crews were in the area, without notice or permission, Steven Hammond ignited several fires that spread onto BLM land.  The fires were spotted by BLM firefighters camped nearby.

Steven Hammond's criminal conduct could have created a substantial risk of death or serious bodily injury.  But, Brett Dunten, a then 25-year-old captain of two crews of young contract firefighters, testified that after he saw the arson fires, he moved his crews and took the necessary precautions to prevent such risk.  ECF 186 at 678-81.  Dunten's actions, not Steven Hammond's, removed any substantial risk of death or serious bodily injury to BLM personnel.

In 2001, Dwight and Steven Hammond were seen by a hunting guide, a hunter and his father.  They saw Steven Hammond and others illegally shooting deer on BLM property.  Shortly thereafter, fires ignited by the Hammonds forced the witnesses to leave the area and destroyed evidence of their crime.  The witnesses avoided substantial risk of death or serious bodily injury; however, Dwight's grandson and Steven's nephew, Dusty, did not.

The then 13-year-old, who had been enjoying his first hunt with his father Russell Hammond, his Uncle Steven Hammond and Jacon Taylor, was enlisted by his grandfather and uncle as an accomplice in their arson.  Following his uncle's instructions, Dusty lit fires then "kind of" got trapped by the fire and thought he was going to be "burned up."  Afterwards, Steven, Russell and his grandmother, Suzy Hammond, told him not to say anything about the fires because Steven, Dwight and Russell would go to jail.  PSR ¶ 24.

The arsons committed by Dwight and Steven Hammond for which they were found guilty, did not create a substantial risk of death or serious bodily injury to BLM personnel.   The absence of such risk undercuts finding a base offense level of 24.

**Obstruction of Justice**

The government does not support Officer Robb's two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  While trial testimony and official reports support the information presented in the presentence report, Steven

and Dwight Hammond were acquitted by the trial court and the jury of the charges involving obstruction of justice.  PSR ¶¶ 12-15.

## 18 U.S.C. § 3553(a) Factors

The government's 2012 sentencing memorandum provided an analysis of those factors which warranted the imposition of the mandatory five-year prison terms.  Unsurprisingly, the Hammonds and the government still disagree on the nature and circumstances of their offenses and their histories and characteristics.

The Hammonds portrayed their arsons as being actions by ranchers attempting to protect their ranch's interest.  With the insight provided by a young relative endangered by one of those arsons, the government viewed the Hammonds as ranchers who acted as if they had exclusive rights to the public property to which they only possessed grazing leases.

Steven and Dwight Hammond opposed the BLM's management policies of that property – policies intended for all the public to use, enjoy and profit from – hunters, recreationalists and naturalists, as well as ranchers.

While having the right to disagree with such policies, a jury found the Hammonds had no right to burn those public lands regardless of their purported motives.

## CONCLUSION

As ordered by the Ninth Circuit Court of Appeals, the government respectfully requests this Court sentence Steven and Dwight Hammond in compliance with the law.

The government recommends that Steven Dwight Hammond receive two mandatory minimum five-year prison terms, and that they be served concurrently. S*ee* Counts 3 and 5 of the Superseding Indictment, 18 U.S.C. § 844(f)(1), 18 U.S.C.§ 3584.  The government further recommends that Dwight Lincoln Hammond, Jr., also receive the mandatory minimum five-year prison term.  S*ee* Count 3 of the Superseding Indictment, 18 U.S.C. § 844(f)(1).  Each should receive credit for the time they have served in custody.

The Hammonds should be ordered to serve a three-year term of supervised release with credit for the time they have already served on supervised release.  The conditions should be the same as those previously imposed on October 30, 2012.

If not already paid, Steven Hammond should pay a $200 fee assessment and Dwight Hammond should pay a $100 fee assessment.

Respectfully submitted this 21st day of September 2015.

                                                BILLY J. WILLIAMS
                                                Acting United States Attorney

                                                */s/ Frank R. Papagni, Jr.*
                                                FRANK R. PAPAGNI, JR.
                                                Assistant United States Attorney