S. AMANDA MARSHALL, OSB # 953473
United States Attorney
District of Oregon
FRANK R. PAPAGNI, JR., OSB #76278
ANNEMARIE SGARLATA, OSB # 065061
Assistant United States Attorney
405 East 8th Avenue, #2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Facsimile: (541) 465-6917
frank.papagni@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

(EUGENE DIVISION)

| | |
|---|---|
| UNITED STATES OF AMERICA, | 6:10-CR-60066-HO-1 and 2 |
| Plaintiff, | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| v. | (Sentencing Scheduled October 30, 2012) |
| STEVEN DWIGHT HAMMOND, and DWIGHT LINCOLN HAMMOND, JR., | |
| Defendants. | |

The United States of America, by and through United States Attorney for the

District of Oregon, S. Amanda Marshall, and Assistant United States Attorneys

1



Frank R. Papagni, Jr. and AnneMarie Sgarlata, respectfully submits the following sentencing memorandum for the Court's consideration in the sentencing hearing presently scheduled for October 30, 2012.

## SENTENCING RECOMMENDATIONS

Supported by the jury's verdicts and as required by statute, the Government respectfully recommends that defendant Steven Dwight Hammond receive two mandatory minimum 5-year terms of imprisonment, to be served concurrently. *See* Counts 2 and 5 of the Superseding Indictment (CR 104); 18 U.S.C. § 844(f)(1)(setting forth a mandatory minimum 5 years' imprisonment and a maximum 20 years' imprisonment for damaging or destroying, or attempting to damage or destroy, by means of fire, personal or real property of the United States); 18 U.S.C. § 3584. The government recommends that defendant Dwight Lincoln Hammond, Jr. receive the mandatory minimum 5-year prison term applicable to his conviction on Count 2 of the Superseding Indictment (CR 104). *See* 18 U.S.C. § 844(f)(1).

Because the crimes for which each defendant was convicted are Class C felonies, *see* 18 U.S.C. § 3559(a)(3), the government further recommends that both defendants be ordered to serve a 3-year term of supervised release, *see* 18 U.S.C. § 3583(b)(2), with the standard conditions of supervised release and with special

conditions requiring they pay restitution and provide DNA samples. *See also* USSG § 5D1.3(a)(6), (a)(8). Finally, pursuant to 18 U.S.C. § 3013(a)(2), the government recommends that a $200 special assessment be imposed on Steven Hammond, and a $100 fee assessment be imposed on Dwight Lincoln Hammond, Jr.

As the sentencing hearing in this case has been advanced from December 11, 2012, to October 30, 2012, the government does not oppose allowing the Defendants ninety days to self-surrender and commence serving their sentences.

## DEFENDANTS' WAIVER OF APPEAL

This Court accepted the "voluntary" decisions of the defendants to waive "any and all appellate rights and 2255 rights, except for, of course, ineffective assistance of counsel," and to "accept the verdicts as they've been returned thus far by the jury." Trial Transcript 6/21/12 at 25-27. Their waivers were made incident to the government moving for the dismissal of those counts of the Superseding Indictment on which the jury had not returned verdicts, and agreeing to recommend that "any sentences that apply to Steven Hammond . . . run concurrent" and that the defendants "remain released pending the court's sentencing decision." *Id.*

Indeed, Steven Hammond agreed with his attorney's representation that "[t]he idea is there will be no further proceedings beyond this court and will be done at the sentencing. Mr. Steven Hammond agreed to that. He understands where we are. * * * He wants it to be over. He wants this matter to be finished." *Id.* at 26. And Dwight Lincoln Hammond, Jr. concurred with his attorney's statement that he was "agreeable to waive his appellate rights to bring this matter to a close," and with his "understanding that this would be a resolution of this case with the sentence the court imposes. And the parties would accept the – your judgment as to the sentence that's imposed." *Id.* at 27.

Even after the Court accepted Steven and Dwight Hammond's appellate waivers, *id.* at 26-27, the government's attorney reiterated: "I want to make sure the Hammonds understand that under the statute the government is obligated to recommend a five-year mandatory minimum term of imprisonment. I think your lawyer has told you that, but I wanted the record to reflect that you gentlemen have been so warned what the sentence is going to be that I'm going to be asking for." *Id.* at 28.

## REASONS FOR RECOMMENDATIONS

**Count 2 – Steven and Dwight Hammond**

4

The jury found Steven and Dwight Hammond guilty of intentionally and maliciously starting fires on September 30, 2001. Those fires damaged and destroyed property of the United States within the Hardie-Hammond grazing allotment in the Steens Mountain Cooperative Management Protection Area. The government's evidence supporting this conviction came largely from Dusty Hammond, another member of the Hammond family – Steve Hammond's nephew and Dwight Hammond's grandson.

Congress decided that this particular offense should carry a mandatory, statutory minimum term of five years. The evidence of defendants' guilt was substantial. The jury's verdict of guilt for this particular offense mandates imposition of the required statutory minimum term, as the statute constrains this Court's discretion. *See United States v. Wipf*, 620 F.3d 1168, 1169-70 (9th Cir. 2010) (holding that district courts lack discretion to impose sentences below statutorily required minimum terms absent a substantial assistance motion under 18 U.S.C. § 3553(e), or qualification for the safety valve for certain specified offenses under § 3553(f)). Because defendants have provided no assistance to the government and, in fact, they have demonstrated no remorse for their offense, and because arson is not one of the specified offenses for which safety valve relief applies, the statutory minimum term mandates the outcome in this case.

**Count 5 – Steven Hammond**

The jury also found Steven Hammond guilty of intentionally and maliciously setting a fire on Krumbo Butte on August 22, 2006. This fire destroyed property of the United States near Krumbo Butte in the Malheur National Wildlife Refuse and the Steens Mountain Cooperative Management Protection Area. The government's evidence supporting this conviction came from testimony from contract firefighter Brett Dunten, corroborated by Steven Hammond's admissions he had set "back fires" in the Krumbo Butte area. It was also supported by testimony from investigator John Bird who confirmed that the fire on Krumbo Butte had been intentionally set.

As with the charge in Count 2, the evidence supporting this conviction was substantial, and the jury's guilty verdict mandates imposition of the statutory minimum 5-year term.

## FACTS SUPPORTING VERDICTS

**Count 2 – Use of Fire to Damage and Destroy Property of the United States**

Dusty Hammond's testimony was corroborated by the testimony of hunting guide Gordon Choate, the testimony of Utah residents Dennis Nelson and Dustin Nelson, and by undisputed physical evidence introduced at trial. Dusty Hammond's testimony established beyond a reasonable doubt that less than three

hours after Steven Hammond illegally shot several deer on BLM land, Dwight Lincoln Hammond, Jr., Steven Hammond, Russell Hammond, Dusty Hammond, and Jacon Taylor started fires which burned BLM land near the area where the deer had been shot.

When defendants started these fires, they knew that Gordon Choate, Dennis and Dustin Nelson were camped nearby. After his uncle Steven provided him with matches and told him where to start fires, then-13-year old Dusty Hammond became separated from his father Russell Hammond only to find himself alone and surrounded by fire.

At trial, Dusty Hammond testified to remembering "pretty clearly" what happened because he "thought (he) was going to get burned up." Trial Transcript 6/13/12 at 279-80. After escaping the fire, Dusty Hammond was told by Dwight and Steven Hammond, while sitting at the table in the Hammond ranch kitchen with Russell and his grandmother, Susie Hammond, "to keep (his) mouth shut, that nobody needed to know about the fire." *Id.* at 282-83. "[A]fraid of Steven and Susie," Dusty Hammond kept silent until he was no longer afraid. *Id.* at 284-85.

The burn areas referenced in Count 2, observed and mapped by BLM Rangeland Management Specialist Dave Ward in 2001, substantiated Dusty Hammond's testimony about where the fires were set. Defendants' unlawful

7

burning of the 139 acres referenced in Count 2 caused an estimated $400 in damage to the United States. Trial Transcript 6/13/12 at 361-62.

By finding Dwight and Steven Hammond guilty, jurors necessarily found not credible defense witnesses' testimony "about what really happened in 2001," and Steven Hammond's denials of wrongdoing. Jurors rejected the defense assertion that "Dusty Hammond couldn't be more wrong; just about who was there, when, what, everything." Trial Transcript 6/12/12 at 75. This assertion was further undermined when the defense failed to call Russell Hammond to contradict Dusty Hammond's claims as predicted in their opening statement. *Id.* at 62, 75.

**Count 5 – Use of Fire to Damage and Destroy Property of the United States**

In his opening statement, Steven Hammond's attorney told jurors that "Steve Hammond – because of this big fire, Steve Hammond lit some small part on his own property to protect it from the fire on August 23rd. And he told Lance Okeson." Trial Transcript 6/12/12 at 68. However, fire fighter Brett Dunten, using a diagram he had drawn, testified that about 10:00 pm on August 22, 2006, there were three spot fires below the rim of Krumbo Butte. Trial Transcript 6/14/12 at 675, 678. The spot fires were 300 to 500 yards from the main fire and more than a mile from Hammond Ranch property. *Id.,* Exhibits 45, 47. There were no fires between the main fire and the spot fires. *Id.* As defense counsel

8

represented, Steven Hammond had told Okeson on August 23, 2006 that he had been lighting a "back fire" on Krumbo Butte the night before to protect his winter feed. Trial Transcript 6/15/12 at 863-864.

## Statutory Mandated Sentence

Having been found guilty of violating 18 U.S.C. § 844(f)(1), Defendants "shall be imprisoned for not less than 5 years, and not more than 20 years." 18 U.S.C. § 844(f)(1).

## Advisory Sentencing Guidelines Computation

**Steven Hammond**

Pursuant to 18 U.S.C. § 3553(a)(4)(A)(ii), a sentencing court should use the Guidelines Manual in effect on the date the defendant is sentenced. *See also* USSG §§ 1B1.11(a) and (b)(1)(stating that a sentencing court should use the Guidelines Manual in effect on the date that the defendant is sentenced unless doing so would violate the ex post facto clause of the United States Constitution). Here, Steven Hammond was convicted of offenses that occurred in 2001 and 2006, respectively. The Guidelines in effect at the time of his last offense are the 2005 Guidelines. However, because no substantive differences appear to exist between the 2005 and 2011 versions of the Guidelines manual, the 2011 version should control.

Count 2: Use of Fire to Damage and Destroy Property of the United States

Steven Hammond was convicted on Count 2 of the Superseding Indictment with violating 18 U.S.C. § 844(f)(1) by using fire to damage or destroy property of the United States. Violations of that statute are governed, in the first instance, by USSG § 2K1.4, entitled Arson; Property Damage by Use of Explosives. Pursuant to USSG § 2K1.4(a)(4), the base offense level applicable to Count 2 is two plus the offense level from USSG § 2B1.1, entitled Theft, Embezzlement, Receipt of Stolen Property, Property Destruction, and Offenses Involving Fraud or Deceit. The base offense level under § 2B1.1(a) is six because violations of 18 U.S.C. § 844 are not referenced directly to § 2B1.1 *See* USSG § 2B1.1(a). *See also* USSG § 1B1.5(b)(1) & (2)(an instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline, including the base offense level and the specific offense characteristics, as well as any cross references and special instructions). Pursuant to § 2B1.1(b)(14)(A), an increase of 14 levels applies if the offense involved the "conscious or reckless risk of death or serious bodily injury."

In this case, testimony and evidence at trial reflect that Steven Hammond, with Dwight Lincoln Hammond, Jr. also present, gave matches to a group of people on September 30, 2001, and told them to start fires and where to start them.

10

Among the group was Steven Hammond's then-13-year-old nephew Dusty Hammond. 6/13/12 Tr. at 275 ("Steven started handing out boxes of Strike Anywhere matches and said we were going to light up the whole country on fire"). Dusty Hammond began lighting fires, which quickly rose to eight to ten feet, surrounding and trapping him in, and causing him to fear for his life. Trial Transcript 6/13/12 at 279-80 ("I thought I was going to get burned up"). Because Steven Hammond's actions in committing the arson charged in Count 2 of the Superseding Indictment created a "conscious or reckless risk of death or serious bodily injury" to individuals including Dusty Hammond, the 14-level increase under § 2B1.1(b)(14)(A) applies. When added to the offense level of two from 2K1.4(b)(2), this yields an Adjusted Offense Level of 16.

Count 5: Use of Fire to Damage and Destroy Property of the United States

As with Count 2, the base offense level applicable to Count 5 under § 2K1.4(a)(4) is two plus the offense level calculated under § 2B1.1. *See* USSG § 2K1.4(a)(4). The applicable base offense level under § 2B1.1 is six because violations of 18 U.S.C. § 844 are not linked directly to § 2B1.1. *See* USSG § 2B1.1(a). Pursuant to § 2B1.1(b)(1)(C), an additional four levels apply because the BLM incurred $15,085.22 in fire suppression costs for the Krumbo Butte fire,

while the U.S. Forest Service incurred $591.52 in suppression costs for the Krumbo Butte fire. This yields an Adjusted Offense Level of 12 for Count 5.

Multiple Count Adjustment

Because the Adjusted Offense Level applicable to Count 2 is 16, and the Adjusted Offense Level applicable to Count 5 is four levels "less serious" than 16, application of § 3D1.4 increases the Combined Adjusted Offense Level by two, resulting in a Combined Offense Level applicable to both counts of 18. *See* USSG § 3D1.4(a), (b).

Criminal History Score

Steven Hammond's prior convictions include a May 2012 conviction in Harney county, Oregon, for unsworn falsification, a Class A misdemeanor. Pursuant to § 4A1.1(c), one point should be added to his criminal history score. Steven Hammond's criminal history also includes a prior conviction, after a bench trial in federal magistrate court in the District of Oregon, for which he received a sentence of two years' probation. Pursuant to § 4A1.1(c), another point should be added to his criminal history score. Pursuant to § 4A1.1(d), an additional two points should be added because he was on probation for that offense when he committed the offense in Count 2. With four criminal history points, Steven Hammond's criminal history category is III. This, combined with an Adjusted

Offense Level of 18, results in an advisory guidelines range of 33 to 41 months' imprisonment.

<u>Application of Mandatory Minimum Sentence of Imprisonment</u>

Pursuant to § 5G1.1(b), where a statutorily required minimum sentence is greater than the maximum applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence. Here, a 60-month mandatory minimum term of imprisonment applies to each violation of 18 U.S.C. § 844(f)(1). Since the 60-month mandatory minimum is greater than the maximum applicable guidelines range of 33 to 41 months, the statutorily required sentence of 60 months is also the advisory guideline sentence for Steven Hammond.

**Dwight Lincoln Hammond, Jr.**

<u>Count 2: Use of Fire to Damage and Destroy Property of the United States</u>

Dwight Lincoln Hammond, Jr. was convicted of Count 2 of the Superseding Indictment, alleging a 2001 arson on public lands. Guidelines section 1B1.11 directs a sentencing court to use the Guidelines manual in effect at the time of sentencing unless doing so would violate the *Ex Post Facto* clause of the United States Constitution. Here, the 2000 Guidelines should be used to determine Dwight Lincoln Hammond, Jr.'s applicable advisory Guidelines range, because they appear to result in a lower offense level than the 2011 Guidelines.

13

The base offense level for offenses involving 18 U.S.C. § 844(f)(1) is found in USSG § 2K1.4 of the 2000 Guidelines manual. Pursuant to § 2K1.4(a)(4) of that manual, the base offense level applicable to Count 2 is two plus the offense level calculated under § 2B1.3 of the 2000 Guidelines manual. The base offense level under §2B1.3 is four plus the loss determined by the table in § 2B1.1. A loss amount greater than $100 and less than $1,000 increases the offense level by one. Because testimony at trial established a loss to the BLM of $400 for Count 2, the Total Offense Level under the 2000 Guidelines manual is seven.

Criminal History Category

Dwight Lincoln Hammond, Jr. has no prior criminal history, so a criminal history category of I applies, resulting in an advisory Guidelines range of 0 to 6 months.

Application of Mandatory Minimum Sentence of Imprisonment

Pursuant to § 5G1.1(b), where a statutorily required minimum sentence is greater than the maximum applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence. Here, a 60-month mandatory minimum term of imprisonment applies to Dwight Lincoln Hammond, Jr.'s conviction for violating 18 U.S.C. § 844(f)(1). Since the 60-month mandatory

minimum is greater than the maximum advisory guidelines range of 0 to 6 months, the statutorily required sentence of 60 months is also the guideline sentence.

### Analysis of 18 U.S.C. § 3553(a) Factors

The Congressionally mandated statutory minimum terms dictate the sentences that must be imposed in this case. *See Wipf*, 620 F.3d at 1169-70. The sentences are, nevertheless, substantively reasonable in light of the factors set forth in 18 U.S.C. § 3553. First, the nature and circumstances of the 2001 arson offense - committed on public lands and in a location the defendants knew to be used for hunting and recreation by members of the public – are egregious. Setting fires without proper authorization or controls endangered the public. *See* Trial Transcript 6/12/12 at 125-26, 138 (hunting guide Gordon Choate decided to take the Nelsons hunting in the northwest side of the Steens mountains because he had hunted that area before "[m]any times" and "done a lot of scouting up there" in the past, and that was the area where he "saw some of the nicest animals"; Choate's testimony about encountering Dwight Lincoln Hammond, Jr., another man, and a child in a pickup truck on the mountain defendants set fire to later that same day; Dwight Lincoln Hammond, Jr. specifically asked Choate where his hunting party was camped); Trial Transcript 6/13/12 at 260 (Dusty Hammond's testimony that Dwight Lincoln Hammond, Jr. had "seen some hunters up there" near the watering

15

hole and the reservoir while flying his airplane the morning of the offense in Count 2); *id.* at 230-31, 235 (Dennis Nelson's testimony that based on the smoke in the vicinity of their campsite "we decided to get out of there and head for home;" that when they arrived at their truck to do so, the intensity of the smoke had increased and they were able to see the flames of the actual fire coming from the area they had left); *id.* at 250 (Dustin Nelson's testimony that he and his father concluded their hunting trip early because of the smoke). See also 18 U.S.C. § 3553(a)(1).

Second, although letters from members of the community indicate that both defendants are exemplary neighbors, Steven Hammond's history and characteristics include not only a prior violation of federal law on public lands that resulted in a misdemeanor conviction; Steven Hammond was actually on probation for that offense at the time he committed the 2001 arson in this case. The fact that Steven Hammond, while on probation for violating federal law on public lands, both violated federal law on public lands and encouraged others – including children – to do so, demonstrates a history of disregard not only for the integrity of public lands, but for the justice system as a whole. See 18 U.S.C. § 3553(a)(1). Moreover, both defendants demonstrated a reckless disregard for the safety of their own kin when they handed 13-year-old Dusty Hammond Strike Anywhere matches and directed him to light up the whole country on fire. Their actions put Dusty in

16

real danger when he became separated from them and trapped by fire. Fortunately, Dusty survived, but he was terrified by the experience (he thought he was going to be "burned up." *See* Trial Transcript 6/13/12 at 279-80) and he was bullied by the defendants to cover up the crime.

Under these circumstances, the 60-month mandatory minimum sentence applicable in this case appropriately reflects the seriousness of the offense and provides just punishment for both defendants. Indeed, because Steven Hammond – who was on probation for committing an earlier federal offense on public lands when he committed the offense in Count 2 – clearly was not deterred by his probationary sentence, the mandatory minimum sentence is also appropriate to protect the public from further crimes and afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(B) and (C).

Moreover, the 60-month mandatory minimum term of imprisonment is the appropriate sentence for each defendant in this case because it is the most lenient sentence available under the law, 18 U.S.C. § 3553(a)(3), and is consistent with the pertinent policy statement under the Guidelines of imposing the mandatory minimum sentence when that sentence is greater than advisory guidelines range, 18 U.S.C. § 3553(a)(5). *See also* USSG § 5G1.1(b). Finally, a 60-month sentence for each defendant based on their convictions under 18 U.S.C. 844(f)(1) helps to avoid

unwarranted sentencing disparities between these and all other defendants convicted of the same conduct under this statute because it is within the statutorily-mandated range of sentences applicable to such conduct. *See* 18 U.S.C. § 3553(a)(6).

## Conclusion

For these reasons, the government respectfully recommends that the court impose on Steven Hammond and Dwight Lincoln Hammond, Jr. the 60-month mandatory minimum sentence applicable to each offense of conviction.

DATED this 25th day of October, 2012.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*/s/ Frank R. Papagni, Jr.*
FRANK R. PAPAGNI, JR.
Assistant United States Attorney